Nos. 18,618-18,619.

Eugene E. Neverdahl *v.* Roland L. Linder, et al.
Maurice D. Isaacson *v.* Roland L. Linder, et al.
(347 P. [2d] 512)

Decided December 7, 1959.

Messrs. CADDES & CAPRA, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. SAMUEL R. FREEMAN, Assistant, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFFS in error were applicants for architects' licenses before the Colorado State Board of Examiners of Architects. That board denied their applications. Upon review in the district court, the action of the Board was affirmed and the applicants seek reversal of the judgment by writ of error.

The applications herein were filed pursuant to C.R.S. 1953, 10-2-14, which provides as follows:

*"License without examination.* — At any time within six months after this article becomes effective, upon due application therefor, the board shall issue a license without written or oral examination to:

"(1) Any person who has been engaged in the practice of architecture in Colorado, as defined in subsection (1) of section 10-2-2, for a period of three years prior to the effective date hereof; or

"(2) Any person who is presently licensed under the provisions of sections 10-1-1 to 10-1-20."

In connection therewith, evidence was offered by the applicants to show that they had been employed as architects for more than three years by various building concerns in Colorado. Upon the showing thus made, the board denied the applications and in the case of the applicant Neverdahl stated that:

"His exhibits are completely unacceptable."

With respect to the applicant Isaacson, the board said:

"His application merely refers to exhibits submitted which consisted of small residential plans only. Small

residential plans do not prove in any way the applicant's ability to perform the professional services embracing the safe, healthful, scientific and orderly coordination of the processes which enter into the planning, designing, erection of public or private buildings, as called for under Section 2 (a) of the law."

The applicants, at their request, were granted a hearing, following which the board again denied their applications. The limited findings are those contained in the board's minutes and read as follows:

"The testimony of Eugene E. Neverdahl . . . regarding his application for a license which had been previously denied, failed to show that he had practiced or offered to practice architecture as defined under Section 2 (a), for a period of three years prior to the enactment of the statute.

"Mr. Neverdahl stated in his testimony that he had far better exhibits than he originally submitted and he further stated that he would like to submit additional exhibits. Since Mr. Neverdahl has not availed himself of the opportunity of submitting further exhibits and evidence, no action was taken regarding the Board's previous denial of his application for a license.

"The testimony of Maurice D. Isaacson . . . failed to show that he has practiced or offered to practice architecture, as defined under Section 2 (a), for a period of three years prior to the enactment of the statute."

The specific contention of both applicants is that their evidence brings them within the scope of the term "practice of architecture" as provided in 10-2-14, supra.

"*Definitions.* — (1) The 'practice of architecture' within the meaning and intent hereof is the offering to the general public or the performance of professional services embracing the safe, healthful, scientific, aesthetic and orderly coordination of the processes which enter into the planning, designing, erection, alteration or enlargement of any public or private building or building project and which are performed through the media of

consultations, evaluations, investigations, preliminary studies, plans, specifications, contract documents, supervision of construction and other related service."

It is the further contention of the applicants that the structures on which they performed work as architects were "buildings within the meaning of the above definitions" and that their efforts constituted "professional services." They dispute the board's conclusion that experience in the area of small residences is insufficient. They maintain that such a conclusion is not justified. See *Peck v. Womack*, 62 Nev. 184, 192 P. (2d) 874, holding that an applicant for license as a builder need not show competency in any particular classification within the general category, and *Cronheim v. Board* (Pa.), 53 Daugh. 6.

The applicants also contend that the trial court erred in concluding that the statute excluded one who was "employed" from the operation of 10-2-14, supra. They maintain that the words "engaged" and "employed" are synonomous and that one who is employed by a contractor or other architect can acquire qualifying experience notwithstanding the employment relationship.

The Board argues that the language of C.R.S. 1953, 10-2-9 pertaining to written examinations by applicants and which allows an applicant "who has been employed, engaged or experienced for a period of not less than 8 years in architectural work to take the examination" is an exclusive provision enacted for persons like the present applicants who have been "employed" rather than in an independent contractor status. The Board further argues that Sec. 10-2-14, supra, is a grandfather clause which is intended to avoid legislating out of business anyone who has previously practiced and that it should be strictly limited to persons who have been previously licensed or to persons who have been holding themselves out, and have been performing, as practicing architects.

██ 1. In order to ascribe to this statute the meaning

contended for by the Board, it would be necessary for us to read into the definition "practice of architecture," a meaning which the legislature has not seen fit to include within the definition. Sec. 10-2-2 (1) defines this term as "the offering to the general public *or* the performance of professional services embracing a safe, healthful, scientific and orderly coordination of the processes . . ." It is impossible to construe this statutory definition as outlawing the practice of architecture by one in the relationship of an employee. Had the General Assembly intended to limit the definition in this manner it would have been relatively easy to state that one who is employed by a firm which has performed work requiring the services of an architect is not engaged in the "practice of architecture." Here the statute sets forth the standards for determining applications for licenses in detail, Sec. 10-2-2, supra. These standards must govern determinations such as that before us, and it is not possible to give effect to some latent spirit or philosophy. Cf. *Linder v. Copeland,* 137 Colo. 53, 320 P. (2d) 972.

We are not impressed with the Board's argument that the structure of Sec. 10-2-14 compels the narrow construction for which they contend. Whatever may have been the legislature's reason for establishing two categories in Sec. 10-2-14, it seems to us that we must take the wording of paragraph (1) as we find it and treat it as making available the benefits of this so-called grandfather clause to the full class of those "engaged in the practice of architecture" within the meaning of 10-2-2. We do not believe that the design of this statute as a whole or Sec. 10-2-14 in particular indicates a legislative purpose to narrow or restrict the availability of a license to one engaged in the independent practice of architecture as a contractor. Cf. *Waier v. State Board of Registration* (1942), 303 Mich. 360, 6 N.W. (2d) 545; 4 A.L.R. (2d) 667, 682.

2. As heretofore indicated, the findings of the Board were inadequate. From a review of this record, it

would seem that the Board based its decision for the most part on the conclusion of fact and law that the applicants were employees. In so doing, it acted erroneously. It was the duty of the Board, following the initial rejection of the applications, to allow these applicants to bring forward any and all evidence necessary, appropriate and related to the definition "practice of architecture" as it is set forth in 10-2-2, supra. It was the duty of the Board, following a hearing, to enter detailed findings of fact with respect to the matters presented to it and with relationship to the definitions contained in Sec. 10-2-2, supra. The purported findings at bar are no more informative than those which were entered in *Linder v. Copeland,* supra, where the Court, speaking through Mr. Justice Moore, said:

"It has been held repeatedly by courts of last resort that the record and findings of administrative boards must disclose the basis of the conclusions reached by them. In the instant case the conclusion of the Board is that the showing of Copeland was 'insufficient to show he has practiced architecture in the state of Colorado for a period of three years.' We again state that there is not one scintilla of evidence in the record of the proceeding before the Board indicating that Copeland was not engaged in the practice of architecture for the required period of time. If the Board had knowledge of some fact of which it took notice, apart from the exhibits submitted by Copeland, it does not appear in the record.

"When, as here, a court is called upon to review the action of an administrative agency, it should be placed in the same position as the agency. 'If the administrative agency has knowledge of some fact and acts upon such knowledge, the agency should see to it that what it knows becomes part of the record in order to permit the reviewing court to evaluate the matter so known.' *Geer v. Stathopulos,* 135 Colo. 146, 309 P. (2d) 606. The Board having found no facts warranting the

conclusions which it reached has given this court nothing whatever to review."

. See also *Board of Commissioners v. Salardino,* 136 Colo. 421, 318 P. (2d) 596, and see *Geer v. Presto,* 135 Colo. 536, 313 P. (2d) 980.

■ A full discussion of the practical reasons for requiring findings of fact is contained in 2 *Davis, Administrative Law* 444-449. It is not necessary for us to assign degrees of importance to the various reasons there discussed. All are important. That findings of fact are essential to any inquiry on review is readily apparent to this Court through its everyday experience. Mr. Justice Cardozo put the matter simply when he said:

"We must know what a decision means before the duty becomes ours to say whether it is right or wrong." *U.S. v. Chicago, M., St. P. & P. R.R.,* 294 U.S. 499, 510-511 (1935).

Furthermore, since the determination of facts relating to the consideration of those desiring to practice architecture in Colorado has been entrusted under the statute to the Board of Examiners, we have no authority to examine the record and make findings of our own even if we possessed the expert knowledge and desire to do so. Finally, we note that experience has shown that it is a rare administrator or judge who is as able to marshal facts and make a reasoned application of legal principles thereto in his mind with the same precision and assurance as he is when he must put his conclusions in writing. This view is concurred in by Judge Frank, who has said:

"Often a strong impression, that on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper." *U.S. v. Forness* (2d Cir. 1942), 125 F. (2d) 928, 942.

■ In the instant case the complete lack of adequate findings renders review of the action of the Board impossible. For that reason the cause must be remanded.

This disposition is different from the dispositions in *Linder v. Copeland,* supra and in *McNertney v. Colorado State Board of Architect Examiners,* et al., 139 Colo. 554, 342 P. (2d) 633. In these latter cases the mandate required the issuance of a license. The undisputed evidence disclosed that the applicants there had been practicing architecture and inasmuch as the Board passed on the evidence, it was proper to conclude that its action denying the applications was arbitrary and capricious. In the instant cases the Board's decision appears to have been grounded on an erroneous construction of the statute. It did not consider the evidence nor issue valid findings.

The judgments are reversed and the causes remanded with directions to the trial court to vacate the judgments heretofore entered and to remand both causes to the Board of Architect Examiners with instructions to that body to hold full hearings on the applications involved and to enter proper findings of fact on the question of whether the applicants have practiced architecture within the meaning of Sec. 10-2-2, supra.

MR. JUSTICE MOORE and MR. JUSTICE FRANTZ concurring.