John F. deKOEVEND, Petitioner,

v.

BOARD OF EDUCATION OF WEST END SCHOOL DISTRICT RE-2, Kay Crane, Bill Gabriel, Ben Kilgore, Sam Puderbauch, and Lowell Watson as members of the Board of Education of West End School District RE-2, Montrose County, State of Colorado, Respondents.

No. 82SC295.

Supreme Court of Colorado, En Banc.

Aug. 27, 1984.

Rehearing Denied Oct. 9, 1984.

*School District,* 653 P.2d 743 (Colo.App. 1982), which affirmed an order of the West End School District Board of Education (board) dismissing the petitioner, John F. deKoevend, from his tenured teaching position. The court of appeals determined that the record provided an adequate basis for judicial review and also held that the attendance of two witnesses at the board's closed executive session which resulted in the dismissal order was not an adequate basis for reversing the order, even though these witnesses had testified adversely to deKoevend at the statutory dismissal hearing conducted by the hearing officer. We reverse the judgment of the court of appeals and remand for further proceedings.

## I.

A detailed statement of the facts will place in focus the issues before us. John F. deKoevend was a tenured teacher[1] of fifth grade at Nucla Elementary School in Nucla, Colorado. On August 14, 1979, Roy Johnson, the superintendent of the district, acting pursuant to section 22–63–117 of the Teacher Employment, Dismissal, and Tenure Act of 1967 (Teacher Tenure Act), §§ 22–63–101 to 118, 9 C.R.S. (1973 and 1983 Supp.), filed a written recommendation for deKoevend's dismissal due to "incompetency, neglect of duty, immorality, insubordination and other good and just cause." The recommendation was based on the following charges:

"1. Improper physical contacts with students, including but not limited to, pinching, kicking, fondling or patting of breasts, buttocks and other areas of students and scuffling or wrestling with students.

"2. Use of improper language toward students and calling students improper names.

Hobbs/Bethke & Associates, Larry F. Hobbs, P.C., William P. Bethke, Denver, for petitioner.

Reese Miller, P.C., Kenneth A. DeLay, Denver, for respondents.

QUINN, Justice.

We granted certiorari to review the decision of the court of appeals in *deKoevend v. Board of Education of West End*

---

1. Section 22–63–112(1), 9 C.R.S. (1983 Supp.), states, in relevant part, that

"any teacher employed as a teacher in the same school district ... continuously and without interruption for three full academic years who is thereafter reemployed for the fourth academic year immediately succeeding in such school district has tenure as a teacher in such school district, without further action on the part of the board or the teacher, during efficiency and good behavior and continuous employment."

"3. Use of improper teaching techniques and inappropriate subject matter.

"4. Failure to maintain proper classroom management, control and discipline.

"5. Failure and/or refusal to conform to directives, requests and decisions of the administration and Board of Education of the School District with respect to the preceding matters.

"6. The preceding particulars having occurred or existed throughout or on occasion during the period of time commencing with the 1972–1973 academic year and continuing through the date of these charges."

The school board accepted the charges for review and suspended deKoevend without pay pending final resolution of the case.[2]

A hearing was conducted by a hearing officer on October 22 and 23, 1979. The school superintendent, Roy Johnson, testified generally to the events that led to the filing of charges, namely, his receipt of several complaints from parents of students with respect to deKoevend's conduct and deKoevend's failure to follow directions relating to teaching techniques and classroom management. Detailed testimony was elicited from other witnesses showing that deKoevend had continuously engaged in physical contacts with his students inside and outside the classroom. Four female students testified that deKoevend made them feel uncomfortable by doing such things as putting his arm around their shoulders or waists, patting and pinching them on their buttocks, kicking them, picking them up and pretending to throw them over the balcony in the school hall, putting them on his knee, and, in the case of one student, touching her on the breast.[3] The mothers of three of the students testified about the emotional distress which these contacts caused their children. Additional evidence indicated that deKoevend at times used such terms as "stupid," "ignorant," and "ugly" in addressing his students. While admitting that he often would make physical contact with his students, such as putting his arm around their shoulder to relax them, deKoevend denied any sexual implications in such contacts. He also admitted to engaging in friendly "roughhousing" with students in the school halls and on the playground.

The school principal, Larry Swain, testified that deKoevend failed to maintain a proper classroom environment to guide his students through the learning experience. On several visits to deKoevend's classes

---

2. Section 22–63–117(2), 9 C.R.S. (1973), states that "[u]pon written recommendation by the chief executive officer of the district or any member of the board, charges against any teacher may be filed with the board of the school district employing the teacher." If the board accepts the charges for review, then the secretary of the board must give written notice of the charges to the teacher. § 22–63–117(3), 9 C.R.S. (1983 Supp.). If a hearing is requested by the teacher, it must be conducted before a hearing officer selected from a list of three hearing officers provided by the director of the division of hearing officers in the department of administration. § 22–63–117(5), 9 C.R.S. (1983 Supp.). Under the present statutory scheme, the hearing officer is chosen in the following manner: within seven days after receipt of the list, the board must strike one name from the list and forward it to the teacher who must also strike one name within seven days after receipt, and the remaining person "shall be the hearing officer." Id. Section 22–63–117(12), 9 C.R.S. (1973), which was applicable to the proceedings in this case, provided that "[i]f the board orders the dismissal of a teacher, the teacher's compensation shall be suspended as of the date of the dismissal but in no event earlier than the date of the order." The Teacher Tenure Act was amended in 1983 to read as follows:

"If the board orders the retention of the teacher, the teacher shall have suffered no loss of pay by reason of suspension pending the final action of the board except for salary withheld due to a teacher's failure to comply with the deadline for striking a name from the list of three hearing officers as required in subsection (5) of this section." Ch. 232, sec. 2, § 22–63–117(12), 1983 Colo.Sess.Laws, 773, 776.

3. The evidence was undisputed that deKoevend had been instructed by the principal to avoid touching his students in any manner lest his conduct be misinterpreted. These instructions had been given in October 1978 after four fifth graders told the principal that deKoevend during class had "pinch[ed] them on the arms and back," "kick[ed] them in the butt," and had refused to permit them to go to the principal's office to register a complaint about his conduct.

the principal observed a chaotic atmosphere which he described as follows:

"kids wandering around the room without obvious educational purpose; kids playing with an item that would not be appropriate to the lesson at hand; visiting in a loud, boisterous manner; at times, perhaps, on the floor or scuffling or while Mr. deKoevend was ... making a presentation, not paying attention to it; playing with a toy in their lap; giving the impression that the teacher ... was not in tune and aware about everything that was happening within the classroom."

Other teachers in Nucla Elementary School also testified to the disorganized character of deKoevend's classes. Two teachers who conducted classes below deKoevend's classroom stated that the noise level and commotion in his classes were so great that it caused hanging plants and fluorescent light fixtures in their classrooms to shake.

In 1977, 1978, and 1979, the principal prepared written teacher evaluation reports in which he called deKoevend's attention to the need for improved discipline during class. The evaluations contained directions calculated to improve the quality of education by keeping the students busy at positive activities, by adopting a structured classroom environment, and by enforcing specific behavioral expectations on the part of the students. Despite these evaluation reports and directives regarding classroom discipline, deKoevend failed to control the students' behavior in his classes. He responded to the 1977 evaluation report by writing the principal that "[i]f students are frustrated and angry by an overabundance of rules, the learning climate may not be improved," and that "[r]egulating every minute of a student's day means that he never learns to think for himself and/or accept responsibility ... for himself." Further testimony indicated that over a period of several months deKoevend had failed to comply with the principal's instruction to submit three weekly recorded grades for each student on each subject and to submit a curriculum guide for certain classes.

The hearing officer found that deKoevend's physical contacts with the students were improper, "in that they were offensive to some of the children and their parents" and were contrary to the principal's instructions, but they "were without overt sexual connotations" and were not "sexually provocative or exploitive." The one incident involving the touching of a student on the breast was found by the hearing officer to be inadvertent. With respect to the charge of improper use of language, the hearing officer found that, although deKoevend had referred to his students in injudicious terms, his references were never obscene or vulgar and neither the board nor administrative staff or the district objected to their use. It was the further finding of the hearing officer that, although his students achieved the same level of skill as other students, deKoevend's teaching techniques did not meet the standards of the school district as implemented by the principal and that his techniques were improper. The hearing officer also found that deKoevend "failed to maintain proper classroom management, control and discipline when measured by the standards of the school district as implemented by the principal," and that, after these matters were called to his attention by the principal, he failed to comply with the directions of the principal. It was the hearing officer's conclusion that deKoevend's failure to comply with the rules and directives of the school district, as implemented by the principal, constituted neglect of duty and insubordination. Although the hearing officer recommended dismissal, he did so with some reluctance as evidenced by the following part of his ruling:

"In attempting to arrive at a recommendation, the hearing officer is uncomfortable with the feeling that this discharge action would never have been initiated had not the school administration believed that the teacher's physical contacts with female students were sexually provocative or exploitive. Since such was not the case, the hearing officer would, if he had the authority, recommend that the teacher be placed on a

one-year probation which is a sanction which may be imposed by the Board of Education. Not having such authority and having found that the teacher has engaged in conduct which constitutes neglect of duty and insubordination and furthermore noting that the school administration has made reasonable efforts to change the direction of such conduct without success, it will be recommended that the teacher be dismissed."

The board met on December 27, 1979, to consider the hearing officer's findings and recommendations. Present at the meeting were deKoevend and his wife as well as the school superintendent and principal, both of whom had testified at the previous hearing. The board decided to consider the deKoevend matter "in executive session," a closed hearing "at which only those persons invited by the board may be present." § 22-32-108(5), 9 C.R.S. (1973). The board, however, permitted the superintendent and principal to be present during the executive session, but excluded deKoevend and his wife. The record does not indicate what transpired at the executive session. At the conclusion of the session, which lasted approximately a half-hour, the board unanimously adopted the following resolution:

"WHEREAS the Board of Education has duly considered the matter of dismissal of John F. deKoevend; and

"WHEREAS John F. deKoevend has been duly notified by the Secretary of the Board of Education of the time, place, and purpose of this meeting; and

"WHEREAS the Board of Education has reviewed the Hearing Officer's findings of fact and recommendations and has considered the same and all proceedings herein.

"NOW THEREFORE, BE IT RESOLVED that the Board of Education orders that John F. deKoevend be dismissed from employment in the West End District RE–2 effective this 27th day of December 1979."

The court of appeals, with one judge dissenting, affirmed the order of dismissal. After noting that the hearing officer's findings were sufficiently specific to support the board's order of dismissal, the majority held that the presence of the school superintendent and principal at the executive session of the board, although improper under *Weissman v. Board of Education*, 190 Colo. 414, 547 P.2d 1267 (1976), was not a sufficient reason to reverse the dismissal order because, in its view, "there was substantial evidence supporting the Board's decision, neither the principal nor the superintendent cast a vote, and no substantial prejudice was shown." 653 P.2d at 746. We granted certiorari to consider two questions: (1) whether the hearing officer's findings and the board's order of dismissal provided an adequate basis for judicial review; and (2) whether the presence of the school superintendent and principal during the board's closed session at which it deliberated on the hearing officer's recommendation of dismissal violated deKoevend's right to due process of law, U.S. Const. amend. XIV; Colo. Const. art. II, § 25.

## II.

We first consider deKoevend's contention that the hearing officer's findings of fact and the board's decision did not provide an adequate basis for judicial review. Meaningful judicial review of an administrative determination cannot be accomplished unless the record of the proceedings disclose the reasons for agency action. The orderly functioning of judicial review "requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). The court, in other words, must know what a decision means before it can properly perform its duty in determining whether it is right or wrong. *United States v. Chicago, Milwaukee, St. Paul and Pacific Railway Co.*, 294 U.S. 499, 510–11, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935); *Neverdahl v. Linder*, 141 Colo. 186, 192, 347 P.2d 512, 515 (1959); *Linder v. Copeland*, 137 Colo. 53, 57–58, 320 P.2d 972, 974 (1958).

The statutory grounds for dismissal under the Teacher Tenure Act are "physical or mental disability, incompetency, neglect of duty, immorality, conviction of a felony, insubordination, or other good and just cause." § 22–63–116, 9 C.R.S. (1973). The Teacher Tenure Act contemplates a two-step process of administrative adjudication on charges filed against a teacher. Section 22–63–117(8), 9 C.R.S. (1983 Supp.), initially requires the hearing officer to "review the evidence and testimony[,] make written findings of fact thereon," and recommend either that "[t]he teacher be dismissed or the teacher be retained." The board's function, which is the second phase of the administrative process, is set out in section 22–63–117(10), 9 C.R.S. (1983 Supp.):

"The board of education shall review the hearing officer's findings of fact and recommendations, and it shall enter its written order within thirty days after the date of the hearing officer's findings and recommendations. The board shall take one of the three following actions: The teacher be dismissed; the teacher be retained; or the teacher be placed on a one-year probation; but the board shall make a conclusion, giving its reasons therefor, that the hearing officer's findings of fact are not supported by the record made before the hearing officer if it dismisses the teacher over the hearing officer's recommendation of retention, and such finding shall be included in its written order."

We discussed the two-phased process of administrative adjudication in dismissal proceedings under the Teacher Tenure Act in *Ricci v. Davis*, 627 P.2d 1111 (Colo.1981). Although the statutory scheme in *Ricci* provided for an initial evidentiary hearing by a hearing panel, rather than a hearing officer as presently required by section 22–63–117(8), 9 C.R.S. (1983 Supp.), our analysis in *Ricci* is equally applicable here. We there stated that the function of the hearing panel was to take and weigh the evidence, as to both accuracy and credibility, and make findings of basic or evidentiary fact with respect to the charges filed against the teacher, along with a recommendation of dismissal or retention. 627 P.2d at 1118. Findings of evidentiary fact involve the raw, historical data underlying the controversy. *Lee v. State Board of Dental Examiners*, 654 P.2d 839, 844 (Colo.1982); *Ricci*, 627 P.2d at 1118; *Blair v. Lovett*, 196 Colo. 118, 124 n. 13, 582 P.2d 668, 672 n. 13 (1978). These findings of evidentiary fact "are binding on a board of education if supported by substantial and competent evidence in the record and furnish the sole bases for the board's findings of ultimate facts." *Ricci*, 627 P.2d at 1118. Findings of ultimate fact are within the exclusive province of the board. *Id.* Ultimate findings, in contrast to evidentiary findings, involve a conclusion of law or at least a determination of a mixed question of law and fact and settle the rights and liabilities of the parties. *Lee*, 654 P.2d at 844; *Ricci*, 627 P.2d at 1118; *Blair*, 196 Colo. at 124 n. 13, 582 P.2d at 672 n. 13. In making its ultimate findings the board, as we noted in *Ricci*, may review the transcript of the evidentiary hearing "to ascertain, in the first instance, whether the panel's findings are adequately supported by the evidence." 627 P.2d at 1119.[4] While the board in the exercise of its ultimate fact-finding func-

---

**4.** Section 22–63–117(10), 9 C.R.S. (1983 Supp.), states that the board "shall review the hearing officer's findings of fact and recommendation," but does not expressly require the board to review the transcript of the evidentiary hearing before the hearing officer. It would seem, however, that the only way the board can appropriately determine whether the hearing officer's evidentiary findings are supported by substantial and competent evidence is to review a transcript of the evidence or, at the very least, a written summary of the evidence. *See Big Top, Inc. v. Hoffman*, 156 Colo. 362, 399 P.2d 249 (1965). Since section 22–63–117(8), 9 C.R.S. (1983 Supp.), requires the school district to pay the costs of recording the evidence, the board, prior to its review of the hearing officer's findings, might well consider requiring the school district to submit a transcript of the evidence presented to the hearing officer. As an alternative, the board might require the parties to submit in writing an accurate summary of the evidence sufficiently in advance of the board's review session to permit an adequate review by board members.

tion is vested with " 'considerable discretion' to fix the precise substantive content" of the statutory grounds for dismissal, *Ricci*, 627 P.2d at 1118, the board's findings of ultimate fact must be fully warranted by the evidentiary findings of the hearing officer. It is the hearing officer, rather than the board, who "is empowered to assess credibility, weigh conflicting evidence and draw factual inferences from the testimony and exhibits introduced by the parties." *Ricci*, 627 P.2d at 1119. As we stated in *Ricci:*

"To permit a board to look outside the four corners of the hearing panel's findings and base its ultimate findings, in whole or in part, on the 'cold' hearing transcript would:

'defeat one purpose of having an impartial hearing panel [to protect the academic freedom of tenured teachers by ensuring a neutral forum for the presentation of evidence] and place decisions based on the evaluation of evidence in the hands of a body which has not actually seen and heard the witnesses. Such a holding would not comport with the legislative intent underlying this statutory scheme.'

*"Blair v. Lovett, supra,* 196 Colo. at 123, 582 P.2d at 671. The same two purposes—guaranteeing the teacher an impartial fact-finder and promoting the accuracy and integrity of the fact-finding process—would be frustrated if a board's ultimate findings were to be retrospectively justified by 'raw' evidence adduced at the hearing but never adopted as a finding of fact by the hearing panel. Thus, although a school board's findings of ultimate fact must be sustained if warranted in the record, the record, for purposes of judicial review of those findings, consists *solely* of the formal findings of basic or evidentiary fact made by the panel and forwarded to the board pursuant to section 22–63–117(8)." 627 P.2d at 1119 (footnote omitted) (emphasis in original).

It is within this procedural framework of administrative adjudication that we must evaluate the adequacy of both the hearing officer's evidentiary findings and the board's order of dismissal in order to determine whether the record provides an adequate basis for judicial review. We first review findings which the hearing officer determined to be supportive of the charge and then the order of dismissal.

A.

The evidentiary findings of the hearing officer were more detailed in some respects than in others. The hearing officer, for example, made detailed findings relating to various types of physical contacts that deKoevend had with his students. These contacts, although neither sexually provocative nor exploitive, were nonetheless found to be in contravention of explicit instructions from the principal to avoid such contacts. Less specific findings were made with respect to deKoevend's failure to meet with "the standards of the school district as implemented by the principal" in the areas of teaching techniques and classroom management, control, and discipline. The evidentiary findings on these matters, however, make explicit reference to three teacher evaluation reports which set forth in detail the reasons for the principal's dissatisfaction with deKoevend's classroom performance and contain specific directions for improvement.

█ The above findings of the hearing officer constituted the factual basis for his determination that deKoevend's conduct constituted neglect of duty and insubordination. Although these findings were not a model of specificity, they were nonetheless sufficient to permit the board to perform its statutory duty to first consider whether these findings were adequately supported by the evidence, *Ricci*, 627 P.2d at 1116–17, and then to render ultimate findings on whether deKoevend's conduct constituted one or more of those statutory grounds for dismissal on which the charges against him were predicated.

B.

█ Notwithstanding the adequacy of the hearing officer's findings relating to

the charges of neglect of duty and insubordination, the record clearly demonstrates that the board did not make any ultimate finding as to the statutory basis for its order of dismissal. On the contrary, the board's order of dismissal merely recites that the board, after considering the hearing officer's findings and recommendation, resolved that deKoevend should be dismissed. As previously discussed, the statutory scheme for teacher dismissal proceedings contemplates that the board set forth in ultimate terms the statutory basis on which its decision is predicated. Without some reference to the reason for the board's decision, we are left to speculate as to whether the board's order of dismissal was based on the hearing officer's evidentiary findings or, instead, on evidence considered and rejected by the hearing officer.

For all the board's order shows, deKoevend's dismissal could have been based on immorality, a statutory ground without support in the hearing officer's evidentiary findings. Alternatively, the board might have dismissed deKoevend on the statutory grounds of neglect of duty and insubordination, both of which, in the hearing officer's view, were established by the evidence presented at the initial phase of the adjudicatory process. Other alternatives are also possible. The dismissal order might have been based on all three grounds —immorality, neglect of duty, and insubordination—or the board might have decided to discharge deKoevend for incompetency—a statutory basis included in the original charges but not addressed in the hearing officer's findings. Without an explicit reference to the statutory basis for dismissal, we cannot ascertain whether the order of dismissal was predicated on the evidentiary findings made by the hearing officer, nor can we assess whether the dismissal order was supported by substantial and competent evidence. *SEC,* 318 U.S. at 94–95, 63 S.Ct. at 462–63; *Neverdahl,* 141 Colo. at 190–91, 347 P.2d at 514–15; *State ex rel. Newton v. Board of School Trustees,* 404 N.E.2d 47, 48–49 (Ind.App.1980). Under these circumstances we are foreclosed from effectively evaluating the board's

order in relation to both the statutory criteria for dismissal in section 22–63–116, 9 C.R.S. (1973), and the evidentiary findings of the hearing officer.

### III.

Although the unspecific nature of the board's order requires a reversal of the judgment on that basis alone, we nonetheless elect to address deKoevend's other claim that his constitutional right to due process of law was violated when the board, in retiring to consider the hearing officer's findings and recommendation, permitted the school superintendent and the principal to be present during its deliberations. The board's actions, in our view, clearly violated basic concepts of fairness in an adjudicatory proceeding.

The essence of due process is basic fairness in procedure. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *Lamm v. Barber,* 192 Colo. 511, 522–23, 565 P.2d 538, 546 (1977) (disapproved on other grounds, i.e., standing, in *Board of County Commissioners v. Fifty-First General Assembly,* 198 Colo. 302, 599 P.2d 887 (1979)); *Mountain States Telephone and Telegraph Co. v. Department of Labor and Employment,* 184 Colo. 334, 338, 520 P.2d 586, 588 (1974). Administrative agencies have the obligation, as do courts, to be fundamentally fair to the individual in the resolution of a legal dispute involving governmental action that threatens to deprive an individual of a significant property interest. *E.g., Withrow v. Larkin,* 421 U.S. 35, 46–47, 95 S.Ct. 1456, 1464–65, 43 L.Ed.2d 712 (1975); *Mountain States Telephone and Telegraph Co.,* 184 Colo. at 338, 520 P.2d at 588. While an administrative proceeding is entitled to a presumption of regularity, the presumption is only a rebuttable one. *Ricci,* 627 P.2d at 1117. Different situations may entail different types of procedures, but there is always the general requirement that there must be some type of neutral and detached decision maker. *Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464;

*Murchison,* 349 U.S. at 136, 75 S.Ct. at 625. One of the purposes of the Teacher Tenure Act is "to assure tenured teachers [are provided] an impartial forum in which ... to defend themselves against charges alleging any of the statutory grounds for dismissal." *Lovett v. Blair,* 39 Colo.App. 512, 515–16, 571 P.2d 731, 733 (1977), *aff'd,* 196 Colo. 118, 582 P.2d 668 (1978). Not only is actual fairness mandated, but the integrity of the administrative process also requires that the appearance of fairness be preserved.

In *Weissman v. Board of Education,* 190 Colo. 414, 547 P.2d 1267 (1976), which involved the dismissal of a teacher under the Teacher Tenure Act, the school board permitted its attorney, who had taken part in the evidentiary hearing in an adversary role akin to that of prosecutor, to retire in private with the school board during the board's deliberations. Although the board's decision to dismiss the teacher was upheld, this court viewed the attorney's presence during the board's deliberations as a heightened risk to both the fact and the appearance of impartiality, each of which is necessary to the proper execution of the board's reviewing function. To obviate this threat to fairness in future proceedings, we admonished the board and counsel to refrain from such conduct in the future. 190 Colo. at 425, 547 P.2d at 1276.

 In this case the board's decision permitting the school superintendent and principal to be present during its closed deliberations violated both the letter and spirit of our admonition in *Weissman.* The school superintendent initiated the charges in this case and testified to the complaints he received about deKoevend's conduct and deKoevend's failure to follow directions relating to his teaching responsibilities. The principal gave detailed testimony about each of the respective charges brought against deKoevend. It is undisputed that both witnesses had a substantial interest in the outcome of the board's deliberations. Although the record does not show that these witnesses actually contributed to the final decision of the board, their presence

during the board's deliberative session, at the very least, was such as to substantially undermine the appearance of impartiality in connection with the board's statutory review of the hearing officer's findings and recommendation and, under the particular circumstances of this case, was sufficient to overcome the presumption of regularity attendant to an administrative proceeding. We therefore hold that the presence of the school superintendent and principal during the deliberative process of the board violated deKoevend's due process right to a fair and impartial determination by the board. *See Gonzales v. McEuen,* 435 F.Supp. 460 (C.D.Cal.1977) (due process rights of high school students violated when, during expulsion hearings, school superintendent was permitted to sit with board members and to act as secretary to the board); *Commonwealth Department of Education v. Oxford Area School District,* 24 Pa. Commw. 421, 356 A.2d 857 (1976) (participation by school superintendent, who had testified in teacher dismissal proceeding against teacher, in school board's deliberations violated teacher's right to unbiased adjudication by the board).

## IV.

We are left with the question of the appropriate remedy on remand. The procedural impropriety that occurred here places in issue whether the board can impartially perform its statutory review function upon remand of the case for further consideration, or whether deKoevend should be automatically reinstated to his teaching position without further action by the board.

 Several reasons point us to the conclusion that a reconsideration by the board, rather than automatic reinstatement, is the appropriate remedy in this case. Nothing in the record remotely suggests any prejudgment of the facts of the case by a board member or a manifestation of personal bias or prejudice against deKoevend by any member of the board, both of which would be grounds for disqualifying that member. *E.g., Cinderella Career and Finishing Schools, Inc. v. FTC,* 425

F.2d 583 (D.C.Cir.1970); *American Cyanamid Co. v. FTC*, 363 F.2d 757 (6th Cir. 1966). Rather, our concern here is with an error in procedure committed by an administrative body during the formal administrative process. The fact that the board acted improperly in permitting two witnesses to be present during its deliberations does not necessarily mean that board members, on that account, would be incapable of carrying out their statutory responsibilities upon reconsideration of the case—that is, to impartially determine whether the hearing officer's findings of evidentiary fact are supported by substantial and competent evidence and whether those findings provide a sufficient basis for dismissal of the teacher or one-year probation; or instead, whether the teacher should be retained because the findings either are unsupported by the evidence or do not warrant an ultimate finding of one of the statutory grounds for dismissal. § 22–63–117(10), 9 C.R.S. (1983 Supp.); *Ricci*, 627 P.2d at 1118.[5] Furthermore, section 24–4–106(7), 10 C.R.S. (1973), of the State Administrative Procedure Act, which applies to judicial review of a school board's decision under the Teacher Tenure Act, § 22–63–117(11), 9 C.R.S. (1983 Supp.), expressly authorizes a remand of the case for further proceedings when, as here, the agency action is "not in accord with the procedures or procedural limitations of this article or as otherwise required by law." *See Maul v. State Board of Dental Examiners*, 668 P.2d 933, 937 (Colo.1983) ("When the Board fails to observe its statutory duties and substantially departs from the procedural requirements of the statutory scheme, the appropriate remedy is a rehearing conducted in accordance with the statutes enacted by the General Assembly.") The board, moreover, is the only tribunal authorized to make a decision on deKoevend's dismissal or retention. If it is not permitted to act, the implementation of those provisions of the Teacher Tenure Act directed to the maintenance of professional responsibility and competence in the classroom of our public schools would be seriously thwarted.[6]

■ There are significant practical consequences attaching to the distinction between, on the one hand, setting aside the discharge of a teacher and ordering a remand for further proceedings, and, on the other, ordering the teacher's reinstatement. The former restores the teacher to his status prior to the procedural error and preserves the teacher's right to an impartial review by the board. Automatic reinstatement, in contrast, nullifies the teacher's temporary suspension and is the equivalent of a dismissal of the pending charges. In this respect automatic reinstatement not

---

5. The board's function in this respect is not unlike that of a judge who, upon reversal of a previous decision rendered in a bench trial, is called upon to decide the same question upon remand of the case. *See NLRB v. Donnelly Garment Co.*, 330 U.S. 219, 236–37, 67 S.Ct. 756, 765–66, 91 L.Ed. 854 (1947); *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1000, 85 L.Ed. 1429 (1941).

6. The rule of necessity is sometimes invoked to permit a judicial or administrative tribunal to act when no other body is authorized to make a decision. For example, in *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed.2d 887 (1920), the United States Supreme Court decided that Article III, Section 1 of the United States Constitution prohibited Congress from taxing the salaries of federal judges, a decision later repudiated in *O'Malley v. Woodrough*, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939). In *Gore*, the Court pointed out that there was no other tribunal to which the plaintiff could resort and "the only course open to us is to consider and decide the cause—a conclusion supported by precedents reaching back many years." 253 U.S. at 247–48, 40 S.Ct. at 550–51. *See also United States v. Will*, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) (rule of necessity prevails over judicial disqualification standards of 28 U.S.C. § 455 in class action filed by federal judges challenging federal compensation statute as violative of Article III, § 1 of United States Constitution, which prohibits diminution of judge's salary during continuance in office). It has been suggested that when the rule of necessity requires an administrative tribunal to act because no other body is authorized to make the decision, a reviewing court should make an intensive study of the administrative record in order to make certain that no injustice was done to the party aggrieved by the administrative decision. K. Davis, *Administrative Law Treatise*, § 19:9 at 404–05 (2d ed. 1980).

only provides the teacher with an unwarranted windfall but, more important, totally ignores the significant public interest in requiring teachers, in the performance of their professional responsibilities, to abide by those standards of conduct and competence that are commensurate with the importance of public education to our social well-being. If a school board determines that a suspended teacher should be retained, that teacher would be entitled to back pay from the date of suspension. § 22–63–117(12), 9 C.R.S. (1983 Supp.).[7] So too, in the event it were to be ultimately determined on judicial review that a school board's order of dismissal was unsupported by the evidence, reinstatement with back pay would be appropriate. Where, however, as here, a school board's order of dismissal is invalidated because of an error in procedure during the board's statutory review of the hearing officer's evidentiary findings and recommendation, we hold that the teacher is not entitled to automatic reinstatement to his former position with back pay, but rather to an administrative review by the board in accordance with proper procedure. *District of Columbia v. Gray,* 452 A.2d 962 (D.C.App.1982); *White v. Board of Education,* 54 Hawaii 10, 501 P.2d 358 (1972); *Puglisi v. School Committee of Whitman,* 11 Mass.App. 142, 414 N.E.2d 613 (1981); *Miller v. Independent School District,* 609 P.2d 756 (Okla.1980); *DiCello v. Board of Directors of Riverside School District,* 33 Pa.Commw. 39, 380 A.2d 944 (1977).

We recognize that in *Howell v. Woodlin School District,* 198 Colo. 40, 596 P.2d 56 (1979), this court ordered reinstatement of a tenured teacher whose contract was cancelled without a hearing pursuant to a statute which permitted cancellation of a teacher's contract when justifiable decreases in the available number of teaching positions occurred. Because the teacher had a constitutionally protected interest in continued employment, the court held that the statute authorizing cancellation of his employment contract was unconstitutional "when applied without granting a hearing at which questions as to reasonableness and preference, as well as factual issues, may be determined." 198 Colo. at 46, 596 P.2d at 60. Insofar as the cancellation of the teacher's contract was invalid for failure to provide due process safeguards, *Howell* properly held that reinstatement of the contract was the appropriate remedy. *Howell,* however, is distinguishable from the instant case, in that *Howell* involved the complete absence of any hearing, whereas in this case deKoevend was granted a hearing pursuant to statute, although the board's action after the evidentiary hearing was tainted by a substantial error in procedure. The court in *Howell* also stated in *dictum* that reinstatement "is appropriate where the dismissal or cancellation is wrongful due to a failure to provide procedural safeguards." *Id.* To the extent that this *dictum* is inconsistent with our holding here, we expressly overrule it.

The judgment of the court of appeals is reversed and the cause is remanded to that

7. As pointed out in note 2, *supra,* section 22–63–117(12), 9 C.R.S. (1973), which has since been amended but was in effect at the time of deKoevend's suspension and dismissal, preserves the suspended teacher's right to back pay until such time as the final order of dismissal is entered by the board. The 1983 amendment to this statute preserves the suspended teacher's right to back pay only if the board orders the retention of the teacher. Ch. 232, sec. 2, § 22–63–117(12), 1983 Colo.Sess.Laws 776. Because the board's dismissal order in this case is being reversed and the matter is to be returned to the board for further review of the hearing officer's evidentiary findings and recommendation, the question arises as to whether deKoevend, in the event the board again orders his dismissal, would be enti-

tled to back pay for the period extending from the date of his suspension on August 14, 1979, to the date of the board's final order after remand, or instead, only for the period extending from his suspension to the board's original order of dismissal on December 27, 1979. We believe it would be premature to address this question at this time, especially since it would require us to prejudge what the board will do upon its reconsideration of this case. Depending on the board's review of this case on remand, the issue could conceivably be moot. There is no question, however, that an order of retention would entitle deKoevend to back pay for the total period of his suspension under both the 1979 and 1983 versions of section 22–63–117(12).

court with directions to return the case to the board for further proceedings in accordance with the views herein expressed.