2012 COA 5

**COLORADO STATE BOARD OF PHARMACY, Petitioner–Appellee,**

v.

**Loren M. PRIEM, Respondent–Appellant.**

No. 11CA0439.

Colorado Court of Appeals, Div. VI.

Jan. 5, 2012.

John W. Suthers, Attorney General, Joanna L. Kaye, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

Sheila H. Meer, P.C., Sheila H. Meer, Diana R. Schatz, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge TERRY.

¶ 1 May a licensing board decline to reinstate a license to a former licensee who has been previously convicted of a crime related to the licensed profession, even though he has demonstrated his subsequent rehabilitation? We conclude that, notwithstanding section 24–5–101, C.R.S.2011, under the circumstances presented here, the board may do so.

¶ 2 Loren M. Priem appeals the Final Agency Order (Final Order) of the Colorado State Board of Pharmacy (Board), which denied Priem's application to become a pharmacy intern. We affirm because the Final Order had a reasonable basis in the law and was supported by substantial evidence in the record.

## I. Background

¶ 3 While he was a licensed pharmacist in Colorado, Priem stole more than 1,500 tablets of schedule II controlled substances, as well as other drugs, worth more than $5,000 from the pharmacies where he worked. He sold or gave away the drugs to persons who did not have prescriptions for them, one of whom was an addict. As a result of these actions, criminal charges were brought against him, and he relinquished his pharmacist license. Priem was convicted of two felonies and a petty offense.

¶ 4 Three years after relinquishing his license, and after completing his sentence, Priem applied to be a pharmacy intern. Because a pharmacy internship is a prerequisite to licensure as a pharmacist under section 12–22–116(3.3)(a)(III), C.R.S.2011, Priem's internship application amounted to an application for reinstatement of his pharmacist license. The Board denied his application based on the facts surrounding his prior licensure relinquishment. Priem appealed this decision, and was granted a hearing before an administrative law judge (ALJ). The ALJ issued an initial agency decision, finding that Priem had demonstrated rehabilitation and thus proved his fitness for licensure, and ordering reinstatement of his license.

¶ 5 The Board, on its own motion, filed exceptions to the ALJ's initial agency decision, and held a hearing. In its Final Order, the Board adopted the ALJ's findings of fact, including the finding that Priem had been

rehabilitated. However, the Board disagreed with the ALJ's conclusion that Priem's rehabilitation warranted the granting of his application. The Board therefore upheld its earlier denial of the application. Priem now appeals the Final Order.

## II. Due Process

¶ 6 Priem first asserts that the Final Order must be reversed because his due process rights were violated when the Board's Chief Inspector—who investigated the case against Priem, served as the Board's advisory witness, and advocated for denial of his license—was present during the Board's deliberations. He further argues that, because the Board's decision is thus tainted, we should reverse its decision and reinstate the ALJ's order granting his license. We conclude reversal is not required.

¶ 7 Priem relies for these contentions on *deKoevend v. Board of Education*, 688 P.2d 219 (Colo.1984). In that case, the supreme court reversed the school board's dismissal of a tenured teacher and remanded the case to the board. *Id.* at 221. The board had allowed the school superintendent and principal, both of whom had testified in favor of dismissal, to be present during the board's closed deliberations. *Id.* at 224. The court held that the board's decision made while those persons were present "violated both the letter and spirit of" the court's earlier admonition in *Weissman v. Board of Education*, 190 Colo. 414, 547 P.2d 1267 (1976), to refrain from such conduct. *deKoevend*, 688 P.2d at 228. The *deKoevend* court noted that the superintendent and principal had a substantial interest in the outcome of the case, and that, under the particular circumstances of the case, their presence during the board's deliberations "was sufficient to overcome the presumption of regularity attendant to an administrative proceeding." *Id.* It further held that their presence "violated deKoevend's due process right to a fair and impartial determination by the board." *Id.*

¶ 8 Priem advances similar due process arguments here. However, he argues that the remedy imposed in *deKoevend*—remand to the same board members who made the original decision, *see id.*—is inappropriate here. According to Priem, the Board members who voted on the ultimate denial of his license showed "profound" personal bias or prejudice against him, given that they were the same Board members who had previously denied his application in 2009. Priem cites section 24–4–105(3), C.R.S.2011, which provides that bias or any other disqualifying reason requires recusal of the adjudicator, unless "withdrawal makes it impossible for the agency to render a decision." He contends that we should reinstate the ALJ's original decision to grant his license.

¶ 9 We are, indeed, troubled by the presence of the Chief Inspector during the Board's deliberations. However, we conclude that, given the particular situation presented here, we need not decide whether the Board's licensing decision must be vacated.

¶ 10 Were we to conclude that Priem's due process right was violated, as in *deKoevend* the remedy would be a remand. We are unpersuaded that, simply because the Board members here previously voted to deny his license, they are incapable of rendering a fair and unbiased decision. *See deKoevend*, 688 P.2d at 228, 229 n. 5 (remanding matter to same school board that had improperly allowed superintendent and principal to be present during prior board deliberations; noting that "[t]he board's function in this respect is not unlike that of a judge who, upon reversal of a previous decision rendered in a bench trial, is called upon to decide the same question upon remand of the case"); *Copley v. Robinson*, 224 P.3d 431, 437 (Colo. App.2009) (where due process violation was found in quasi-judicial proceeding, matter was remanded for new hearing before same sheriff who made previous decision); *see also Watson v. Cal–Three, LLC*, 254 P.3d 1189, 1192 (Colo.App.2011) ("What a judge learns in his or her judicial capacity is a proper basis for judicial observation, and the use of such information does not require disqualification. Thus, a judge is not recusable for bias or prejudice that is based on the facts and circumstances of the case, even where, upon completion of the evidence, the court is exceedingly ill disposed toward a party. Even an opinion as to the guilt or innocence of a criminal defendant is generally not a

basis for disqualification." (citations omitted)). Accordingly, if we were to conclude remand was required, we would remand to the Board.

¶ 11 At oral argument, Priem's counsel conceded that if we were to conclude a remand to the Board is the appropriate remedy, Priem would waive that remedy because of considerations of cost, time, and the possibility of a future appeal on the same issues, and would ask us to proceed to decide the merits of the appeal. Thus, while we do not condone the presence of the Chief Inspector during the Board's deliberations, we proceed to decide the merits of the other issues raised in the appeal.

### III. Merits

¶ 12 Priem next contends that the Board erred in denying his application on the merits. We disagree.

### A. Standards of Review

¶ 13 In this appeal, we are called on to review the Board's Final Order overturning the ALJ's decision. Thus, multiple levels of review are implicated.

¶ 14 An ALJ's findings of evidentiary fact cannot be set aside by the Board on review unless they are contrary to the weight of the evidence. § 24–4–105(15)(b), C.R.S. 2011. However, the Board can substitute its judgment for that of an ALJ with respect to an ultimate conclusion of fact, and the Board's determination of such an issue will be upheld if it has a reasonable basis in law and is supported by substantial evidence in the record. *See State Board of Medical Examiners v. McCroskey*, 880 P.2d 1188, 1193 (Colo.1994).

¶ 15 A reviewing court may overturn an agency decision only if it was arbitrary, capricious, contrary to law, or violative of constitutional rights, or if it constituted an abuse of discretion. § 24–4–106(7), C.R.S. 2011; *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo.2001); *McClellan v. Meyer*, 900 P.2d 24, 29 (Colo.1995). We examine the record in the light most favorable to the agency's decision. *Alliance for Colo-*

*rado's Families v. Gilbert*, 172 P.3d 964, 968 (Colo.App.2007).

¶ 16 We review issues of statutory construction de novo. *Smith v. Colorado Motor Vehicle Dealer Bd.*, 200 P.3d 1115, 1116 (Colo.App.2008). We may consider and defer to an agency's interpretation of its own enabling statute, but we are not bound by the agency's interpretation. *Board of County Comm'rs v. Colorado Pub. Utilities Comm'n*, 157 P.3d 1083, 1088 (Colo.2007).

¶ 17 The goal of statutory interpretation is to ascertain the General Assembly's intent. *People v. Nance*, 221 P.3d 428, 430 (Colo.App.2009). If legislative intent is clear from the plain language of the statute, other rules of statutory interpretation need not be applied. *Id.* The words of statutes are to be given their plain and ordinary meaning. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.*, 3 P.3d 30, 35 (Colo.2000).

### B. Application of Statutes

¶ 18 Priem's challenge here is to the Board's ultimate conclusion of fact as to whether he demonstrated adequate grounds for reinstatement of his license. *See McCroskey*, 880 P.2d at 1193. He contends the Board lacked a reasonable basis in the law to deny his application because it incorrectly applied section 12–22–125, C.R.S.2011, and section 24–5–101. He further argues that there was no evidence in the record to support the Board's decision. We are not persuaded.

### 1. Pertinent Statutory Provisions

¶ 19 The Board may deny an application for licensure when the applicant has engaged in activities that are grounds for discipline. § 12–22–125.2, C.R.S.2011.

¶ 20 Under section 12–22–125, the Board may discipline any licensee who has a felony conviction, violates any state or federal law pertaining to drugs, or is "unfit or incompetent by reason of negligence, habits, or physical or mental illness, or for any other cause, to practice as [a pharmacist]." § 12–22–125(1)(b), (1)(c)(III), (1)(d), C.R.S.2011.

¶ 21 The state endorses a general policy that allows rehabilitated convicted felons to obtain business and occupational licenses. § 24–5–101; *Zamarripa v. Q & T Food Stores, Inc.*, 929 P.2d 1332, 1340 (Colo.1997). As pertinent here, section 24–5–101 provides:

(1) (a) [T]he fact that a person has been convicted of a felony ... shall not, in and of itself, prevent the person from ... applying for and receiving a license ... required by the laws of this state to follow any business, occupation, or profession.

. . . .

(2) Whenever any state or local agency is required to make a finding that an applicant for a license ... is a person of good moral character as a condition to the issuance thereof, the fact that such applicant has, at some time prior thereto, been convicted of a felony or other offense involving moral turpitude, and pertinent circumstances connected with such conviction, shall be given consideration in determining whether, in fact, the applicant is a person of good moral character at the time of the application. The intent of this section is to expand employment opportunities for persons who, notwithstanding that fact of conviction of an offense, have been rehabilitated and are ready to accept the responsibilities of a law-abiding and productive member of society.

§ 24–5–101(1)(a), (2), C.R.S.2011.

### 2. Burden to Disprove Rehabilitation

¶ 22 The ALJ found that Priem had been rehabilitated after the commission of his crimes, and the Board adopted that finding. Relying on *Zamarripa* and *Colorado Real Estate Commission v. Bartlett*, 272 P.3d 1099 (Colo.App.2011), Priem maintains that the Board had the burden to show that its denial of Priem's application was merited by producing evidence to contradict his postconviction rehabilitation. We disagree.

¶ 23 The proponent of an order bears the burden of proof. § 24–4–105, C.R.S.2011. The proponent of an order is the party who initiates a matter for litigation or action. *Velasquez v. Dep't of Higher Educ.*, 93 P.3d 540, 542 (Colo.App.2003). An applicant for a license is the proponent of an order in an administrative setting, and bears the burden to prove that he or she is qualified for the license that the agency is withholding. *Kourlis v. Dist. Court,* 930 P.2d 1329, 1335 (Colo.1997).

¶ 24 Priem argues that once he satisfied his initial burden to present evidence that he had been rehabilitated, the burden of going forward was then on the Board to disprove rehabilitation. We are not persuaded that the Board had to satisfy any such burden to support its decision.

¶ 25 Contrary to Priem's argument, the circumstances of *Zamarripa* and *Bartlett* are inapposite here. Because both were license revocation cases, the government entity in each instance bore the burden to prove all elements, including, in *Bartlett*, the licensee's lack of rehabilitation. *See Kourlis,* 930 P.2d at 1335; *Bartlett,* —— P.3d at ——. Here, at issue was not a license revocation, but an application to reinstate Priem's pharmacist license after it had been relinquished. Priem, as the person appealing the denial of that license, was the "proponent of the order" and bore the burden to prove he met the qualifications for licensure. *See Kourlis,* 930 P.2d at 1335.

¶ 26 *Zamarripa* involved a proceeding to revoke a lottery sales agent's license. The supreme court there stated:

Before the Agency may decide to override the otherwise applicable state policy relating to rehabilitated felons, it must attempt to give effect to that policy but may determine, for reasons of the Lottery in a particular instance after a quasiadjudicatory proceeding, that this policy should not be given effect. Section 24–5–101 embodies the generally applicable policy of the state of Colorado that convicted felons who have served their sentences and are rehabilitated may be granted business and occupational licenses.

929 P.2d at 1339. Contrary to Priem's assertion, *Zamarripa* does not support his contention that in a proceeding seeking reinstatement of a license, the agency bears the burden to disprove the former licensee's rehabilitation.

¶ 27 Unlike the Real Estate Commission in *Bartlett*, —— P.3d at ——, the Board here did not bear any burden to demonstrate that Priem had not been rehabilitated. The Board's adoption of the ALJ's finding that Priem had been rehabilitated did not preclude the Board from analyzing whether any other circumstances weighed against his licensure.

### 3. Entitlement to Reinstatement

■ ¶ 28 Priem next argues that, because he demonstrated his rehabilitation, and the Board did not disprove it with evidence of postconviction conduct, the Board was required to defer to the ALJ's findings of fact and reinstate his license. We disagree.

¶ 29 Neither section 24–5–101 nor Colorado case law supports Priem's contention that reinstatement of his license was mandatory upon his demonstration of rehabilitation. The fact of rehabilitation would not, of itself, prove entitlement to licensure. *See Zamarripa*, 929 P.2d at 1339 ("Section 24–5–101 embodies the generally applicable policy of the state of Colorado that convicted felons who have served their sentences and are rehabilitated *may* be granted business and occupational licenses." (emphasis added)) (policy embodied in that statute may be overridden in appropriate cases); *see also* C.R.C.P. 251.29(b) ("An attorney who has been suspended for a period longer than one year ... must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with [all rules regarding reinstatement], and is fit to practice law."); *People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988) (assessment of attorney's fitness for reinstatement to practice law after felony criminal conviction "must include the consideration of numerous factors bearing on the [attorney's] state of mind and ability").

¶ 30 The provisions of the relevant statutes permitted the Board to consider the circumstances surrounding Priem's crimes. Section 12–22–125(2), C.R.S.2011, of the pharmacist licensing statutes provides that, when the Board is considering the conviction of a crime in the context of deciding whether to renew a license, "the [Board] shall be governed by the provisions of section 24–5–101." Section 24–5–101 contains the following pertinent provisions, among others:

> Whenever any state or local agency is required to make a finding that an applicant for a license ... is a person of good moral character as a condition to the issuance thereof, the fact that such applicant has ... been convicted of a felony ... involving moral turpitude, and *pertinent circumstances connected with such conviction, shall be given consideration* in determining whether, in fact, the applicant is a person of good moral character at the time of the application.

§ 24–5–101(2) (emphasis added).

¶ 31 The parties agree that these statutory provisions applied to the proceedings here. Thus, the Board was permitted to consider the pertinent circumstances of Priem's crimes—and not just the facts of his conviction and rehabilitation—in determining whether to reinstate his license. *See Zamarripa*, 929 P.2d at 1341 (in proceeding for revocation of license of lottery sales agent based on criminal conviction, state lottery division could consider whether the offense reasonably related to qualifications required of licensees; division was required to exercise sound discretion based on record of revocation proceedings). Indeed, the use of the word "shall" in section 24–5–101(2) indicates that the Board was required to consider those circumstances. *See Plains Metropolitan Dist. v. Ken–Caryl Ranch Metropolitan Dist.,* 250 P.3d 697, 699 (Colo.App.2010) (statutory provisions indicating that an entity "shall" do something are construed as mandatory).

■ ¶ 32 In its Final Order, the Board gave the following reasons for denying a license to Priem:

> In determining an appropriate action in a licensing matter, the Board must consider its responsibilities to regulate the practice of pharmacy in order to protect the public interest and confidence in the profession. . . .

> To promote this goal, the Pharmaceutical and Pharmacists Act provides that the Board may deny an applicant for licensure

as a pharmacy intern "when the [Board] determines that such applicant ... has engaged in activities that are grounds for discipline." ...

[Section] 24–5–101(1) provides broadly that the mere fact of a past felony should not, in and of itself, create a bar to obtaining a state license.... The statute does not require automatic licensure for all individuals convicted of past felonies, and it does not prohibit a licensing body from rejecting an application for licensure where more is at issue than the mere fact that the applicant has a felony record....

The Board's task is to reconcile and apply both the provisions of the Pharmaceuticals and Pharmacy Act and [section] 24–5–101(1).

In this case, the Board has considered Priem's crimes [and has] considered the nature of the crimes in relation to [his] license and his application to be a pharmacy intern. The Board continues to have a very real concern that the crimes were not unrelated to the professional dispensing of prescription drugs. To the contrary, Priem's convictions were squarely related to his professional position. Priem admitted ... that while working as a pharmacist licensed by the Board, Priem stole large quantities of drugs from three different employer pharmacies[;] he completed and signed a DEA Form 222 through which he ordered two 100–tablet packages of Oxycodone ..., five 100–tablet packages of Oxycontin ..., and two 500–tablet packages of Oxycodone/APAP.... [T]he drugs were not for his own use. Rather, Priem sold at least some of these drugs for monetary gain. He also gave some away. None of the recipients of these drugs possessed prescriptions for the drugs.

The Board's concern is not merely that Priem committed crimes. [Its] concern is that Priem violated laws *pertaining to drugs,* that his violation [of those laws] related directly to the professional dispensing of prescription drugs, that he used his pharmacist license to perpetrate these crimes, and that he now seeks licensure in the same professional arena.

In considering whether to grant Priem's application, the Board has considered both the state's policy of employing individuals who committed felonies in the past, and the evidence presented by Priem that he has been rehabilitated. The Board has weighed these factors against the circumstances surrounding Priem's past crimes, the nature of his crimes, the past abuse of his pharmacist license, and the fact that he seeks a license in the same profession. Based on the particular circumstances of this case, the Board determines that Priem's application for a license as a pharmacy intern should be denied.

(Emphasis in original.)

¶ 33 We conclude that, under sections 12–22–125 and 24–5–101, the Board could consider the circumstances surrounding Priem's criminal conduct in determining whether to reinstate his license, and that his rehabilitation alone did not mandate his licensure. Thus, the Board's interpretation of the law was correct and its determination did not violate these statutes.

¶ 34 We note that, as to any other applicant for pharmacist licensure who engaged in the same conduct Priem engaged in, but who had not been convicted of a felony, nothing would prevent the Board from denying licensure. We agree with the Board that Priem's interpretation of section 24–5–101—that licensure after a felony conviction and rehabilitation is mandatory—would create an advantage to applicants who were convicted of felony crimes over those who may have committed the same conduct but were either not convicted or were instead convicted of a non-felony offense. The General Assembly could not have intended such an absurd result.

■ ¶ 35 We reject Priem's contention that dismissal of count four of the Board's notice of grounds for denial of the license precluded the Board from considering the circumstances surrounding his crimes in determining whether to reinstate his license. That count alleged general unfitness to practice as a pharmacist and breach of the public trust. In its Final Order, the Board relied on the circumstances of Priem's crimes that were described in the general allegations of the notice of grounds for denial; therefore,

Priem was properly on notice that those circumstances remained in issue even after dismissal of count four.

¶ 36 We conclude there was substantial evidence in the record as a whole to support the Board's decision to deny Priem's application for licensure based on the pertinent circumstances surrounding his prior convictions.

## C. Waiver Based on 2006 Revocation

¶ 37 Priem next argues that the Board waived any authority to "permanently exclude him" from licensure based on his convictions when it negotiated the relinquishment of his license in 2006, because the Board could have permanently barred him from pharmacist licensure at that time, but did not do so. We are not persuaded by this contention. It is a benefit to Priem that the Board has not barred him from reapplying for licensure. Contrary to Priem's contention on appeal, the Board has given no indication that it would not grant Priem licensure in the future. Nothing precludes him from reapplying at any time.

¶ 38 Order affirmed.

JUDGE LOEB and JUDGE RICHMAN concur.