Robert M. COPLEY, Plaintiff–Appellant,

v.

J. Grayson ROBINSON, acting in his professional capacity as Sheriff of Arapahoe County, State of Colorado; and Board of County Commissioners of the County of Arapahoe, State of Colorado, Defendants–Appellees.

No. 09CA0469.

Colorado Court of Appeals, Div. VI.

Dec. 24, 2009.

Robert Werking, Centennial, Colorado; Eric J. Wessels, Denver, Colorado, for Plaintiff–Appellant.

Kathryn L. Schroeder, County Attorney, George Rosenberg, Assistant County Attorney, Breena N. Meng, Assistant County Attorney, Littleton, Colorado, for Defendants–Appellees.

Opinion by Judge LOEB.

Plaintiff, Robert M. Copley, appeals the district court's judgment affirming the decision of defendant, J. Grayson Robinson, the Sheriff of Arapahoe County, not to reissue Copley's concealed handgun permit. We reverse the judgment and remand with directions.

## I. Background and Procedural Facts

The Sheriff issued Copley a concealed handgun permit in March 2005, pursuant to Colorado's concealed handgun statutes, §§ 18–12–201 to –216, C.R.S.2009. On April 24, 2007, the Sheriff revoked the permit after Copley was charged with misdemeanor trespass. The prosecutor later dismissed the trespass charge because of the death of a key witness.

In January 2008, a deputy in the Sheriff's office sent Copley a letter instructing him how to request reissuance of his permit, in light of the dismissal of the trespass charge. The letter advised Copley that he could either "request to personally meet with the Sheriff for this review or just have him review [Copley's] file along with the court disposition." Accordingly, in February 2008, Copley requested the Sheriff to reissue his concealed handgun permit and specifically requested a personal hearing with the Sheriff.

On March 27, 2008, the Sheriff held a "reissuance hearing," at which he permitted Copley to testify and present information regarding his request for reissuance, including documentation confirming that the trespass charge had been dismissed. The record indicates that the hearing was documented through an audio recording with Copley's permission. However, the recording is not part of the record in this case.

In a letter dated April 7, 2008, the Sheriff denied Copley's request to reissue the permit without explanation. The letter also did not inform Copley that he had the rights to seek a second review by the Sheriff, to submit additional information for the record, and to seek judicial review of the Sheriff's denial.

In May 2008, Copley filed a complaint in the district court, pursuant to C.R.C.P. 106(a)(4) and section 18–12–207, C.R.S.2009, seeking judicial review of the Sheriff's denial. In early June 2008, the Sheriff filed his answer to the complaint and also moved the district court to remand the case for the Sheriff to make findings of fact and conclusions of law, pursuant to C.R.C.P. 106(a)(4)(IX). In response, Copley requested that the district court hold a de novo evidentiary hearing on the matter. The district court granted the Sheriff's motion and remanded the matter to the Sheriff's office "for the making of findings of fact and conclusions of law."

On August 8, 2008, the Sheriff filed a new order with the district court revoking Copley's permit, nunc pro tunc to April 7, 2008. The order contained three sets of findings of facts. The first set was purportedly based on Copley's testimony at the March 27, 2008 "reissuance hearing." In that regard, the Sheriff found Copley testified that:

a. The trespass allegations had been dismissed upon a motion to the court;

b. The Petitioner is a self-employed bail bondsman, bail enforcement agent and a fugitive recovery agent;

c. The Petitioner had "faced the elephant a few times" and that a weapon provided him with a psychological advantage when dealing with certain individuals;

d. Although the information was classified, the Petitioner was acting as a "hot-wire" for the Domestic Terrorism Unit of the Denver Terrorism Unit of the Denver

Office of the Federal Bureau of Investigation and he was involved in matters related to "drug trafficking, pedophilia and white supremacists";

e. The Petitioner was unwilling or unable to identify his point of contact at the Domestic Terrorism Unit of the Denver Office of the Federal Bureau of Investigation;

f. The Petitioner was working with the Douglas County Sheriff's Office, although the Petitioner did not provide details regarding a contact at the Douglas County Sheriff's Office or the substance of the matters being investigated;

g. The Petitioner considers himself the "Centurion of the neighborhood," in the community of Deer Trail, Colorado;

h. On at least two separate occasions, the Petitioner has inserted himself in matters that appeared to him to be suspicious, although neither incident resulted in any criminal behavior being substantiated by deputies of the Arapahoe County Sheriff's Office;

i. The Petitioner "had a problem" with an individual known as Mason regarding the killing of livestock owned by the Petitioner. The Petitioner conducted his own investigation into the matter as he was not satisfied with the response of the Arapahoe County Sheriff's Office. The Petitioner states that he has determined the identity of those responsible for the killing of the livestock, although he was not willing to provide the information;

j. The Petitioner presented himself, uninvited, unannounced and unwelcome, at the home of an off-duty Arapahoe County Deputy Sheriff to discuss a matter of concern to the Petitioner. During the incident, the Petitioner was armed with a weapon that was visible to the off-duty deputy. The Petitioner was instructed to never again present himself at the home of the off-duty deputy and particularly not while armed. The off-duty deputy was very concerned for the safety of his family during the incident that was initiated by Petitioner; and

k. The Petitioner will occasionally carry a weapon in an exposed manner while in view of the people of Deer Trail, Colorado.

The Sheriff provided no documentation or other evidence in the record to support these factual findings, even though, as noted, the order stated that the Sheriff recorded Copley's testimony at the reissuance hearing.

The second set of findings purported to rely on an April 24, 2007 memorandum from the Sheriff's Investigator, Chris Garner (Garner memo). This memo allegedly contained a variety of information, including that Copley had been the "subject" of "numerous law enforcement contacts." The Garner memo also reported that Copley had allegedly "declar[ed] himself the 'night watchman' of the Town of Deer Trail" and had "openly conduct[ed] surveillance on citizens that he suspect[ed] of breaking the law." The memo went on to allege that Copley tried "to intimidate others by using a knife to clean his fingernails while engaged in conversation" and that Copley "blocked the access of a citizen to his home and property, while [Copley] displayed a weapon to ensure that the involved citizen was aware that [Copley] was armed." The Garner memo is not part of the record in this case, and it is undisputed that Copley was not aware of the memo at the March 27, 2008 reissuance hearing.

The third set of findings appears to be based on other independent investigation the Sheriff had conducted concerning Copley's background. In that regard, the Sheriff found that, upon further review and inquiry, he was not able to confirm Copley's ties to the FBI or the Douglas County Sheriff's Office. He also found that "the truth will never be known" with respect to the trespass charges and that "the allegation of trespass may have been sustained," and also found that "the people of the community report that they are intimidated and fearful as the result of [Copley's] behavior." However, there is no evidence in the record supporting these findings, nor is there any indication that Copley was aware of this independent investigation by the Sheriff.

Based on these findings and citing (1) the community's alleged fear of Copley, (2) Copley's "inappropriate behavior when he 'sus-

pects' others of violating the law," and (3) Copley's other perceived meddling in law enforcement matters, the Sheriff concluded in his August 8, 2008 order that, pursuant to section 18–12–207(2) and (3), C.R.S.2009, he had a reasonable belief that "documented previous behavior by [Copley] makes it likely ... [Copley] will present a danger to himself or others if [Copley] receives a permit to carry a concealed handgun." As noted, this was the first time the Sheriff had articulated this reason as the basis for his denial of Copley's permit request. Accordingly, the Sheriff ordered the revocation of Copley's concealed handgun permit.

Copley renewed his motion for the court to hold a de novo evidentiary hearing to review the Sheriff's decision. The Sheriff objected, arguing that there was no legal basis for such a hearing under C.R.C.P. 106(a)(4). The district court denied Copley's motion for an evidentiary hearing and ordered the parties to file briefs, pursuant to C.R.C.P. 106(a)(4) and section 18–12–207(2).

The district court later affirmed the Sheriff's decision. The court concluded that the Sheriff had made a showing, based on clear and convincing evidence, that "Copley's testimony clearly establishes that Copley regularly demonstrates inappropriate behavior by inserting himself into situations appropriately reserved for law enforcement when he suspects others of violating the law." The district court, therefore, found that the Sheriff "reasonably concluded that Copley could be 'easily motivated to initiate an enforcement action without possessing the proper authority' and that Copley would 'likely present a danger to himself or others.'" The district court declined to address Copley's due process arguments and objections to the Sheriff's use of the Garner memo and other hearsay evidence in preparing his findings of fact, concluding that Copley's testimony alone was "sufficient to support the Sheriff's denial." This appeal followed.

## II. Analysis

Copley contends that the Sheriff's refusal to reissue his concealed handgun permit was based on proceedings and procedures that violated his procedural due process rights.

We agree and conclude that the matter must be remanded to the Sheriff to conduct a new hearing consistent with Copley's due process rights. Because of our resolution of this matter, we need not address Copley's further contentions that the district court erred by denying his request for a de novo evidentiary hearing and that the evidence in the record was insufficient to prove the Sheriff's determination that Copley would be a danger to himself or others.

### A. Colorado's Concealed Handgun Statute

In 2003, the General Assembly enacted a new concealed handgun permit statute. See Ch. 44, sec. 1, 2003 Colo. Sess. Laws 635–48. Unlike the old statute, the new law requires sheriffs to issue permits to applicants who meet certain statutory criteria, unless a sheriff "has a reasonable belief that documented previous behavior by the applicant makes it likely the applicant will present a danger to self or others if the applicant receives a permit to carry a concealed handgun." §§ 18–12–203(2), 18–12–206(1), C.R.S.2009; see also Thomas E.J. "Tobie" Hazard, In the Crosshairs: Colorado's New Gun Laws, 33 Colo. Law. 11 (Jan.2004). Indeed, the General Assembly's legislative declaration indicates that the purpose of enacting the new concealed handgun law was to provide for uniform, state-wide administration and standards in the consideration of applications for concealed handgun permits. See § 18–12–201, C.R.S.2009.

Pursuant to section 18–12–206(1)(b), C.R.S. 2009, if a sheriff denies a permit application, "he or she shall notify the applicant in writing, stating the grounds for denial and informing the applicant of the right to seek a second review of the application by the sheriff, to submit additional information for the record, and to seek judicial review pursuant to section 18–12–207." See § 18–12–203(3)(c), C.R.S.2009 (imposing the same procedural requirements when a sheriff suspends or revokes a permit).

The statutory framework enacted in 2003 also contains a provision on judicial review, section 18–12–207, which provides as follows:

(1) If a sheriff denies a permit application, refuses to renew a permit, or suspends or

revokes a permit, the applicant or permittee may seek judicial review of the sheriff's decision. The applicant or permittee may seek judicial review either in lieu of or subsequent to the sheriff's second review.

(2) The procedure and time lines for filing a complaint, an answer, and briefs for judicial review pursuant to this section shall be in accordance with the procedures specified in rule 106(a)(4) and (b) of the Colorado rules of civil procedure.

(3) Notwithstanding any other provision of law to the contrary, at a judicial review sought pursuant to this section, the sheriff shall have the burden of proving by a preponderance of the evidence that the applicant or permittee is ineligible to possess a permit under the criteria listed in section 18–12–203(1) or, if the denial, suspension, or revocation was based on the sheriff's determination that the person would be a danger as provided in section 18–12–203(2), the sheriff shall have the burden of proving the determination by clear and convincing evidence. Following completion of the review, the court may award attorney fees to the prevailing party.

### B. Standard of Review and Applicable Law

Copley brought this action under C.R.C.P. 106(a)(4) and section 18–12–207. When we review a governmental quasi-judicial decision under C.R.C.P. 106(a)(4), our review "shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." C.R.C.P. 106(a)(4)(I).

■ An action is quasi-judicial when it involves the determination of rights, duties, or obligations so as to adversely affect the protected interests of specific individuals and is reached by application of an existing legal standard to the facts of a case. *Hellas Constr., Inc. v. Rio Blanco County,* 192 P.3d 501, 504 (Colo.App.2008). Here, the parties agree, and we conclude, that the Sheriff's decision not to reissue Copley's permit was a quasi-judicial decision.

■ A governmental body or officer acting in a quasi-judicial capacity abuses its discretion when it fails to afford procedural due process to affected individuals. *Tepley v. Pub. Employees Ret. Ass'n,* 955 P.2d 573, 578 (Colo.App.1997).

■ Procedural due process requires that a governmental body follow fundamentally fair procedures when it threatens an individual with deprivation of liberty or property. U.S. Const. amend. XIV; Colo. Const. art. II, § 25; *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *deKoevend v. Bd. of Educ.* 688 P.2d 219, 227 (Colo.1984) (the essence of due process is basic fairness in procedure). At a minimum, procedural due process requires notice and the opportunity for a meaningful hearing before an impartial tribunal. *Van Sickle v. Boyes,* 797 P.2d 1267, 1273–74 (Colo. 1990). If a quasi-judicial determination depends on the resolution of factual issues, procedural due process requires a hearing where "the parties [are] apprised of all the evidence to be submitted and considered, and that they [are] afforded a reasonable opportunity in which to confront adverse witnesses and to present evidence and argument in support of their position." *Hendricks v. Indus. Claim Appeals Office,* 809 P.2d 1076, 1077 (Colo.App.1990). Other divisions of this court have, in appropriate cases, reversed the decisions of governmental officers or bodies that have failed to provide the required procedural due process protections. *See Fisher v. Colo. Dep't of Corr.,* 56 P.3d 1210, 1213 (Colo.App.2002); *Tepley,* 955 P.2d at 578; *Hendricks,* 809 P.2d at 1078.

As discussed below, we conclude the Sheriff did not provide Copley with the requisite procedural due process protections in determining that his concealed handgun permit should not be reissued.

### C. Notice and Opportunity to Be Heard

■ Copley contends he was denied due process because he was not apprised of or allowed to review adverse evidence or given the opportunity to confront adverse evidence and witnesses. We agree for several reasons.

The first problem we perceive with the Sheriff's procedures is the inadequacy of notice. At no time at or before the March 27, 2008 hearing was Copley informed that his permit might not be reissued on the basis that he was a danger to himself or others under section 18–12–203(2) and (3). When the Sheriff originally issued Copley's permit in 2005, he concluded that Copley satisfied all of the statutory criteria, and the "danger" exception was not a factor. Furthermore, the record shows that Copley's permit was revoked in 2007 solely because of the pending trespass charge, and Copley was advised at that time that he could seek reissuance of the permit if the charge was dismissed. Indeed, the January 2008 letter from the Sheriff's deputy to Copley advised him only that he was permitted to "personally meet with the Sheriff ... or just have [the Sheriff] review [his] file along with the court disposition." Under these circumstances, therefore, it would have been reasonable for Copley to believe that the only question before the Sheriff in the reissuance hearing was whether the trespass charge had actually been dismissed.

Although the Sheriff is correct that Copley knew that the general subject of the hearing would be his concealed handgun permit, this information alone would not have allowed Copley to know that the actual issue at the hearing was whether Copley would be a danger to himself or others if his permit were reissued. Thus, Copley could not have known that he needed to produce any evidence or argument relevant to this issue. *See Hendricks*, 809 P.2d at 1077–78 (concluding that an administrative law judge's decision to resolve a worker's compensation case on an issue that the parties did not dispute denied the claimant a reasonable opportunity to confront adverse witnesses and to present evidence and argument).

Second, and more fundamentally, we agree with Copley that he was simply not apprised of adverse evidence against him on the danger issue and was denied any meaningful opportunity to confront adverse witnesses and evidence on that issue. As the Sheriff's August 7, 2008 order indicated, the Sheriff relied heavily on the Garner memo, prior law

enforcement contacts with Copley, Copley's alleged involvement in law enforcement matters, Copley's reputation in the community, and alleged statements of law enforcement officials and residents of Copley's community. However, the record is devoid of any evidence that the Sheriff apprised Copley about any of these sources of adverse evidence.

In *Puncec v. City & County of Denver*, 28 Colo.App. 542, 475 P.2d 359 (1970), the referee in a worker's compensation case relied on the claimant's hospital records to deny the claimant's request for medical benefits. *Id.* at 544, 475 P.2d at 360. Because the records were never formally introduced into evidence, the claimant had no notice that the referee would consider them. *Id.* A division of this court concluded the referee's consideration of the hospital records denied the claimant due process because he had no opportunity to present evidence or argument responsive to the adverse information in the hospital records. *Id.*

As in *Puncec,* Copley had no notice that the Sheriff would consider the adverse evidence against him, even though the Sheriff later purported to rely on this evidence to determine for the first time that Copley was likely to be a danger to himself or others as a basis for not reissuing his permit. Without such notice, Copley had no way to confront the adverse evidence on this issue or present evidence on his own behalf.

Nor are we persuaded that the Sheriff's findings in his August 8, 2008 order concerning Copley's own testimony eliminate the due process problems here. To the contrary, those findings indicate that the questions the Sheriff asked Copley at the hearing were based, in large part, on the undisclosed evidence the Sheriff had developed on the danger issue. Accordingly, Copley testified without any knowledge of this adverse evidence. In our view, such a procedure violates the basic principle of fundamental fairness that is the essence of procedural due process. *See deKoevend,* 688 P.2d at 227.

Third and finally, deficiencies in the substance and timing of the Sheriff's written orders not reissuing Copley's permit further contributed to the denial of his procedural due process protections. As noted, the con-

cealed handgun statute provides that if a sheriff denies, suspends, or revokes a permit, the sheriff shall notify the permittee in writing, stating the grounds for suspension or revocation. *See* §§ 18–12–203(3)(c), 18–12–206(1)(b). This written statement is particularly important, because it allows a permit holder or applicant to intelligently determine whether to exercise his or her statutory rights to supplement the record before the sheriff, seek a new hearing before the sheriff, and request judicial review. *See id.*

Here, it is undisputed that, after the March 27, 2008 hearing, the Sheriff issued Copley a summary denial letter on April 7, which stated no grounds, supporting facts, law, or reasoning for his refusal to reissue Copley's concealed handgun permit. Thus, even after Copley received the Sheriff's April 7 letter, he had no way of knowing the factual basis for the Sheriff's decision or whether it was properly based on the applicable law. Under these circumstances, we do not perceive how Copley could have made an informed choice about what additional evidence, if any, to submit to the Sheriff, or whether to exercise his right to a second review by the Sheriff.

For these same reasons, we conclude that the Sheriff's findings of fact and conclusions of law, prepared on remand from the district court, do not satisfy the statutory requirement for a "written statement stating the grounds for suspension or revocation." By the time this case proceeded to the district court, it was too late for the Sheriff to inform Copley of the evidence against him and the grounds for the Sheriff's decision in order to provide Copley with a reasonable opportunity to exercise his statutory rights to supplement the record or request a second review to confront such evidence.

### D. Conclusion

Accordingly, we conclude that the proceedings before the Sheriff deprived Copley of his basic procedural due process rights under the United States and Colorado Constitutions and under the concealed handgun statutes. In that regard, we note that our resolution of this case in no way relies on any substantive right to bear arms under either the United States or Colorado Constitutions. Accordingly, because our concern here is with errors of procedural due process committed by the Sheriff, we also conclude the appropriate remedy is a remand to the Sheriff for a new hearing and reconsideration of Copley's request for reissuance of his permit. *See de-Koevend,* 688 P.2d at 228–29.

The judgment of the district court is reversed, and the case is remanded to the district court with directions to remand the matter to the Sheriff for further proceedings consistent with this opinion.

Judge HAWTHORNE and Judge LICHTENSTEIN concur.