The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 7, 2019

## 2019COA33

**No. 17CA2388, *Colorado Real Estate Commission v. Vizzi* — Administrative Law — Professions and Occupations — Real Estate Brokers and Salespersons — Brokerage Relationships — Transaction-brokers**

A division of the court of appeals considers whether a licensed real estate broker can contract away his statutorily required obligations as a transaction-broker under section 12-61-807(2), C.R.S. 2018. Interpreting section 12-61-807(2) and related provisions, the division determines that a transaction-broker's statutory duties are mandatory and cannot be contracted away.

The division also concludes that the Colorado Real Estate Commission's discipline of the appellant broker for failing to perform his statutory duties fell within the Commission's statutory authority and did not violate federal antitrust laws. The division determines that the Commission's decision not to disclose the

identity of the informant who brought appellant's actions to the Commission's attention did not violate appellant's due process rights.

Accordingly, the division affirms the Commission's final order disciplining appellant for failing to comply with the mandatory duties of a transaction-broker under section 12-61-807(2).

Court of Appeals No. 17CA2388
Colorado Real Estate Commission
Case No. RC 2015-0013

_____

Colorado Real Estate Commission,

Petitioner-Appellee,

v.

John J. Vizzi,

Respondent-Appellant.

_____

ORDER AFFIRMED

Division V
Opinion by JUDGE TERRY
J. Jones and Nieto*, JJ., concur

Announced March 7, 2019

_____

Philip J. Weiser, Attorney General, Gina M. Simonson, First Assistant Attorney General, Natalie L. Powell, Assistant Attorney General, Gina M. Cannan, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Montgomery Little & Soran, PC, Nathan G. Osborn, Christopher T. Carry, Greenwood Village, Colorado, for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     Can a licensed real estate broker contract away his statutory obligations as a transaction-broker under section 12-61-807(2), C.R.S. 2018?  We answer "no" to this question, and therefore affirm the final agency order of the Colorado Real Estate Commission disciplining a licensed real estate broker, John J. Vizzi, for failing to fulfill those statutory obligations.  We also conclude that the Commission's enforcement of that statute against Vizzi does not violate federal antitrust laws.  As a result, we affirm the Commission's order.

## I. Factual Background

¶ 2     Vizzi entered into contracts in 2013 and 2014 with three clients to provide unbundled real estate brokerage services in exchange for a flat fee.  In one instance, he contracted only to list the client's property on the Multiple Listing Services (MLS) list.  In two other instances, he contracted only to provide a yard sign, a lock box, and centralized showing services, and to list the properties on the MLS.

¶ 3     After an anonymous informant notified the Commission of Vizzi's practices, it investigated.  As a result, the Commission

charged Vizzi with failing to fulfill his statutory duties under section 12-61-807(2) and sought to discipline him.

¶ 4 An Administrative Law Judge (ALJ) heard the case. She concluded that the duties listed in section 12-61-807(2) are mandatory and that Vizzi had not fulfilled them in any of the three transactions at issue. She therefore disciplined Vizzi under section 12-61-113(1)(k), C.R.S. 2018, requiring him to take twelve hours of continuing education and levying a fine of $2000 plus the statutory surcharge. Although the Commission had sought public censure, the ALJ did not impose it.

¶ 5 Vizzi filed exceptions to the ALJ's decision with the Commission. After hearing oral argument on the exceptions, the Commission issued a final agency order.

¶ 6 The Commission adopted the ALJ's findings of fact and conclusions of law. It agreed with the ALJ's ruling that Vizzi was required to provide to his clients all of the services listed in section 12-61-807(2), and that he violated the provisions of section 12-61-113(1)(k) and (n) by entering into contracts that essentially disclaimed any responsibility to provide statutorily required services.

¶ 7    The Commission modified the discipline imposed on Vizzi to include public censure.  In doing so, the Commission relied on its issuance of a December 2010 position statement that said, in part: "A broker is not allowed to solely perform 'additional' services which require a real estate broker's license . . . without providing the minimum duties required by single agency or transaction brokerage."  Dep't of Regulatory Agencies, Div. of Real Estate, CP-36 Commission Position on Minimum Service Requirements, https://perma.cc/6UZE-DY2T.  Because the position statement was issued before Vizzi entered into the contracts at issue, the Commission concluded that he "should have known that the listing contracts he prepared in 2013 and 2014 were improper."

## II. Contentions Raised on Appeal

¶ 8    Vizzi maintains that he was permitted by statute to contract out of many of the duties imposed on transaction-brokers under section 12-61-807(2), and that the contracts in question successfully accomplished that goal.

¶ 9    Invoking the United States Supreme Court's decision in *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 574 U.S. ___, 135 S. Ct. 1101 (2015), Vizzi asserts that

3

the Commission's enforcement action against him violates federal antitrust law.

¶ 10    He argues that the Commission violated his due process rights by declining to disclose the identity of the person who notified the Commission of Vizzi's actions in the questioned transactions.

¶ 11    And he contends that the Commission exceeded its statutory authority and thus violated his due process rights when it disciplined him more harshly than did the ALJ, and that its decision to do so was arbitrary and capricious.

¶ 12    For the reasons discussed below, we reject these contentions.

### III. Legal Standards

¶ 13    We must sustain the Commission's decision unless it is arbitrary or capricious, unsupported by the evidence, or contrary to law. *Coffman v. Colo. Common Cause*, 102 P.3d 999, 1005 (Colo. 2004); *see also* § 24-4-106(7)(a), C.R.S. 2018 (On review of agency action, "[i]f the court finds no error, it shall affirm the agency action.").

¶ 14    The issues in this appeal are governed by state statute. Statutory interpretation presents a question of law we review de novo. *Gessler v. Colo. Common Cause*, 2014 CO 44, ¶ 7. It is our

function to interpret statutes. § 24-4-106(7)(d) ("In all cases under review, the court shall determine all questions of law and interpret the statutory and constitutional provisions involved."); *El Paso Cty. Bd. of Equalization v. Craddock*, 850 P.2d 702, 705 (Colo. 1993) ("An administrative agency's construction [of a statute] should be given appropriate deference but is not binding on the court.").

¶ 15 Judicial deference to an agency's interpretation of its governing statute is appropriate when the statute is subject to different reasonable interpretations and the issue comes within the administrative agency's special expertise. *Huddleston v. Grand Cty. Bd. of Equalization*, 913 P.2d 15, 17 (Colo. 1996).

¶ 16 Our review of statutory provisions is de novo. *Cowen v. People*, 2018 CO 96, ¶ 11. When interpreting a statute, our primary purpose is to ascertain and give effect to the General Assembly's intent. *Id.* We start by examining the plain meaning of the statutory language. *Id.* We give consistent effect to all parts of the statute and construe each provision in harmony with the overall statutory design. *Id.*, ¶ 13. Our construction must avoid or resolve potential conflicts and give effect to all legislative acts, if possible. *Id.*

## IV. Roles of Licensed Real Estate Brokers

¶ 17 Vizzi is licensed as a real estate broker, and it is uncontested that, in entering into the contracts in issue, he acted as a transaction-broker.

¶ 18 As pertinent here, "real estate broker" is defined as "any person . . . who, in consideration of compensation by fee, commission, salary, or anything of value . . . engages in . . . [l]isting, offering, attempting, or agreeing to list real estate, or interest therein, or improvements affixed thereon for sale, exchange, rent, or lease[.]" § 12-61-101(2)(a)(V), C.R.S. 2018.

¶ 19 Colorado law provides that a licensed real estate broker must act either as a single agent or as a transaction-broker in providing real estate services. § 12-61-803(1), C.R.S. 2018.

¶ 20 A single agent represents one party to a real estate transaction. § 12-61-802(4), C.R.S. 2018. Such an agent's duties include exercising reasonable skill and care, presenting all offers in a timely manner, and disclosing known adverse material facts to the other party in a transaction. §§ 12-61-804 to -805, C.R.S. 2018.

¶ 21     Section 12-61-803(2) makes transaction-broker the default role for a real estate broker who has not entered into a single-agency written agreement with the represented party.

¶ 22     Transaction-brokers assist with a transaction but are not agents for any party.  § 12-61-807(1).  Though transaction-brokers share certain statutory duties that single agents have, such as the duty to present all offers in a timely manner, § 12-61-807(2)(b)(I), their role is more limited than that of a single agent.

¶ 23     Section 12-61-803(1) requires a transaction-broker to disclose the "general duties and obligations arising from that relationship" to the seller and the buyer pursuant to section 12-61-808, C.R.S. 2018.

## A. Mandatory Duties or Default Duties?

¶ 24     The statutory duties of transaction brokers are detailed in sections 12-61-807 to -808.

¶ 25     Vizzi interprets sections 12-61-807 and -808 together to mean that section 12-61-807(2) sets forth only default duties — not mandatory duties — for transaction-brokers.  We disagree.

¶ 26     Section 12-61-802(6) defines "transaction-broker" as "a broker who assists one or more parties *throughout* a contemplated real

estate transaction with communication, interposition, advisement, negotiation, contract terms, *and* the closing of such real estate transaction without being an agent or advocate for the interests of any party to such transaction." (Emphasis added.) The legislature's use of the words "throughout" and "and" indicates that it intended a transaction-broker to assist in the entire transaction and to undertake each of the listed activities.

¶ 27 Section 12-61-807(2) sets out the duties of a transaction-broker. It provides that "[a] transaction-broker *shall* have the following obligations and responsibilities . . . ." *Id.* (emphasis added). Absent a clear indication of contrary legislative intent, the word "shall" in a statute generally indicates that the legislature intended the listed provisions to be mandatory. *See DiMarco v. Dep't of Revenue, Motor Vehicles Div.*, 857 P.2d 1349, 1352 (1993); *cf. People v. Back*, 2013 COA 114, ¶ 25 (concluding that, while the generally accepted meaning of "shall" is that it is mandatory, it can also mean "should" or "may" depending on legislative intent).

¶ 28 The provisions of the transaction-broker statutes indicate that the term "shall" in section 12-61-807(2) specifies mandatory duties. It would be illogical and would frustrate the legislature's intent to

8

interpret the word "shall" as merely permissive, given the lengthy list of "obligations" in subsection (2) of the statute, including the requirement that a transaction-broker "comply with *all* requirements of this article and any rules promulgated pursuant to this article." § 12-61-807(2)(c) (emphasis added).

¶ 29    The duties listed in section 12-61-807(2)(a)-(d) are numerous and broad. They are consistent with the wide array of activities contemplated in the definition of a transaction-broker in section 12-61-802(6). Further, the consistency between the statutory definition of a transaction-broker and the statutory duties that a transaction-broker "shall" have parallels the statutory definition of a single agent and the statutory duties that a single agent "shall" have. *See* § 12-61-802(4) (defining "single agent" as "a broker who is engaged by and represents only one party in a real estate transaction"); § 12-61-805 (using the word "shall" to describe the duties of a single agent). We construe these sections in light of each other. *See Krol v. CF & I Steel*, 2013 COA 32, ¶ 15 (reviewing court must give consistent, harmonious, and sensible effect to all language of a statute).

¶ 30    The General Assembly declared its intent in creating this

statutory scheme as follows:

> The general assembly finds, determines, and declares that the public will best be served through a better understanding of the public's legal and working relationships with real estate brokers and by being able to engage any such real estate broker on terms and under conditions that the public and the real estate broker find acceptable. *This includes engaging a broker as a single agent* or *transaction-broker.* Individual members of the public should not be exposed to liability for acts or omissions of real estate brokers that have not been approved, directed, or ratified by such individuals. Further, *the public should be advised of the general duties, obligations, and responsibilities of the real estate broker they engage.*

§ 12-61-801(1), C.R.S. 2018 (emphasis added).

¶ 31    Though the legislature emphasized the importance of the

public's ability to engage real estate brokers on terms that both the

public and real estate brokers "find acceptable," it also limited that

ability. There are only two roles for which the public can engage a

real estate broker: single agent or transaction-broker. *See* § 12-61-

803(1).

¶ 32    The statutes do not say that the public can engage a real

estate broker to provide unbundled brokerage services, or in any

10

manner that the broker and customer might find mutually acceptable.

¶ 33    Vizzi argues that the duties listed in section 12-61-807 are mere "defaults," and that a broker can contract for the performance of only certain limited duties. We are not persuaded. If the transaction-broker duties in section 12-61-807 — and the parallel single agent duties in section 12-61-805 — were mere defaults, a transaction-broker or a single agent would be able to contract out of the required statutory duties and, in essence, cease acting as a transaction-broker or single agent as defined by statute.

¶ 34    The ALJ found that in entering into certain contracts he drafted, Vizzi "intended not to act as a transaction-broker," and manifested that intent by inserting language into the contracts disclaiming the duties of such a broker. We will not disturb those findings because they are supported by the record.

¶ 35    Allowing Vizzi to disclaim the role of transaction-broker would contravene the statutory scheme. *See* § 12-61-801. The relevant statutes were drafted to create the role of transaction-broker and distinguish it from the role of single agent, and not to enable licensed real estate professionals to avoid the statutorily required

duties of a transaction-broker.  *See Hoff & Leigh, Inc. v. Byler*, 62 P.3d 1077, 1078 (Colo. App. 2002) (discussing the legislative history and purpose of sections 12-61-801 to -810); *see also* §§ 12-61-801, -803.

## B. Section 12-61-808(2)(a)(III)

¶ 36     In arguing that the section 12-61-807(2) duties are merely defaults, and are not strictly required, Vizzi points to section 12-61-808(2)(a)(III), which covers the disclosure of contractual obligations that transaction-brokers undertake.

¶ 37     Section 12-61-808(2)(a)(III) provides, "[i]f the transaction-broker undertakes any obligations or responsibilities *in addition to or different from* those set forth in section 12-61-807, such obligations or responsibilities *shall be disclosed* in a writing which shall be signed by the involved parties."  (Emphasis added.)

¶ 38     Vizzi points us to *Wolford v. Pinnacol Assurance*, 107 P.3d 947, 951 (Colo. 2005), which says that courts should interpret statutes to avoid rendering words redundant or superfluous.  Based on this proposition, he argues that the Commission's interpretation that he could not modify the duties set out in section 12-61-807 would

impermissibly render superfluous the phrase "different from" in section 12-61-808(2)(a)(III). According to Vizzi, section 12-61-808(2)(a)(II) *modifies* section 12-61-807(2) to allow an agent to enter into an agreement to provide fewer services than those enumerated in section 12-61-807. This interpretation is not supported by the statute.

¶ 39     Could the legislature have intended to allow a transaction-broker to contract his way out of having to perform the required duties that the legislature — with great specificity — enumerated in section 12-61-807(2)? Such a reading is highly implausible.

¶ 40     We acknowledge that the "different from" language in section 12-61-808(2)(a)(III) distinguishes that statute from the language of section 12-61-803, which defines relationships between brokers and the public. Section 12-61-803(5) says, "[n]othing contained in this section shall prohibit the public from entering into written contracts with any broker which contain duties, obligations, or responsibilities which are *in addition* to those specified in this part 8." (Emphasis added.)

¶ 41     But we do not interpret the "different from" language in section 12-61-808(2)(a)(III) as permitting a transaction-broker to

contract to provide fewer services than those listed in section 12-61-807. Instead, the legislature intended the services enumerated in section 12-61-807 to be mandatory. We reach this conclusion for the following reasons.

¶ 42    As the Commission argues, section 12-61-808(2)(a)(III) — addressing when a transaction-broker "undertakes any obligations or responsibilities . . . different from those set forth in section 12-61-807" — does not refer specifically to the mandatory duties listed in section 12-61-807(2). Thus, contrary to Vizzi's argument, section 12-61-808(2)(a)(III) would not allow a broker to contract out of mandatory statutory duties.

¶ 43    Instead, we construe the "different from" language of section 12-61-808 to refer to three provisions of section 12-61-807: subsection (3) ("information shall not be disclosed by a transaction-broker without the informed consent of all parties"); subsection (4) (a "transaction-broker has no duty to conduct an independent inspection of the property" or "to independently verify the accuracy or completeness of statements made by the seller, landlord, or independent inspectors"); and subsection (5) (a "transaction broker has no duty to conduct an independent investigation of the buyer's

14

or tenant's financial condition or to verify the accuracy or completeness of any statement made by the buyer or tenant").

¶ 44 Thus, the parties may alter those default provisions by requiring the broker to take on duties *in addition* to those listed. *See* § 12-61-803(5) ("Nothing contained in this section shall prohibit the public from entering into written contracts with any broker which contain duties, obligations, or responsibilities which are in addition to those specified in this part 8.").

¶ 45 For example, subsection (3) would *allow* certain information to be disclosed by a transaction-broker if all parties provide informed consent. If — but only if — such consent is given, the transaction-broker can deviate from the default statutory duty of *nondisclosure* for the following matters detailed in that subsection:

> *The following information shall not be disclosed by a transaction-broker without the informed consent of all parties*:
>     (a) That a buyer or tenant is willing to pay more than the purchase price or lease rate offered for the property;
>     (b) That a seller or landlord is willing to accept less than the asking price or lease rate for the property;
>     (c) What the motivating factors are for any party buying, selling, or leasing the property;

15

> (d) That a seller, buyer, landlord, or tenant will agree to financing terms other than those offered;
>
> (e) Any facts or suspicions regarding circumstances which may psychologically impact or stigmatize any real property pursuant to section 38-35.5-101, C.R.S.; or
>
> (f) Any material information about the other party unless disclosure is required by law or failure to disclose such information would constitute fraud or dishonest dealing.

§ 12-61-807(3)(a)-(f) (emphasis added).

¶ 46     If the transaction-broker entered into an agreement that *allowed disclosure* of any of the matters listed above, the broker would, indeed, be permissibly contracting to "undertake[] any obligation[] or responsibilities . . . *different from*" the default responsibility of nondisclosure of those matters "set forth in section 12-61-807." § 12-61-808(2)(a)(III).

¶ 47     Moreover, section 12-61-808 deals not with a broker's *duties*, but only with required *disclosures*. As a result, an interpretation of section 12-61-808 as somehow modifying the required duties set forth in section 12-61-807 would frustrate the legislature's intent.

¶ 48     And section 12-61-808(2)(a)(III) provides that if responsibilities different from those listed in 12-61-807 are engaged in, "such *obligations or responsibilities shall be disclosed.*" (Emphasis added.)

16

The italicized language would make no sense if the broker's statutory obligations or responsibilities were being eliminated. It only makes sense if obligations or responsibilities are being added to those required by statutes.

¶ 49 As the ALJ and the Commission noted, Vizzi's interpretation would also lead to absurd results, by, for example, allowing him to contract out of the statutory mandate to comply with "any applicable federal, state, or local laws, rules, regulations, or ordinances including fair housing and civil rights statutes or regulations." *See* § 12-61-807(2)(d); *see also Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (Legislatures do not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions."); *Asphalt Specialties Co. v. City of Commerce City*, 218 P.3d 741, 746 (Colo. App. 2009) (A court "will not construe statutes or ordinances in such a manner as to frustrate their purposes or lead to an absurd or unreasonable result.").

¶ 50 We conclude that the provisions of section 12-61-808 do not permit a broker to contract away any of the required statutory duties.

## V. Support for Commission's Determination

¶ 51    In light of our construction of the statutory provisions discussed above, we conclude that the record supports the Commission's adoption of the ALJ's findings that Vizzi violated sections 12-61-113(1)(k), 12-61-113(1)(n), and 12-61-803(1), and we therefore uphold the Commission's determination to discipline Vizzi.

## VI. Federal Antitrust Law

¶ 52    Citing *Dental Examiners*, 574 U.S. ___, 135 S. Ct. 1101, Vizzi argues here, as he did below, that the Commission's policy prohibiting the provision of limited real estate services violates federal antitrust law. According to Vizzi, "the Commission's enforcement of 'minimum services' does not stem from formal rulemaking or statute" but merely from an "unenforceable position statement," apparently referencing the Commission's "Position on Minimum Service Requirements." *See* Dep't of Regulatory Agencies, Div. of Real Estate, CP-36 Commission Position on Minimum Service Requirements. He argues that the Commission is "dominated by market participants — three real estate brokers and two representatives of the public at large," and that, under *Dental*

*Examiners*, the Commission's policy violates federal antitrust laws. We consider and reject these arguments.

## A. Legal Standards

¶ 53    The Supreme Court in *Parker v. Brown*, 317 U.S. 341, 350-51 (1943), "interpreted the antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign capacity." *Dental Examiners*, 574 U.S. at ___, 135 S. Ct. at 1110. A state legislature may delegate the power to regulate a profession to a state agency on which a controlling number of decision-makers are active market participants in that profession, and, in some cases, the actions of that state agency will be immune to federal antitrust law. *See id.* at ___, 135 S. Ct. at 1111.

¶ 54    To determine whether such a state agency's actions are considered the actions of the state in its sovereign capacity and thus shielded from federal antitrust law, we apply the two-part test set forth in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 (1980). *Dental Examiners*, 574 U.S. at ___, 135 S. Ct. at 1111-12. Under the *Midcal* test, a state agency's allegedly anticompetitive conduct will be shielded by state-action immunity from federal antitrust law if, "first, the State has

articulated a clear policy to allow the anticompetitive conduct, and second, the State provides active supervision of [the] anticompetitive conduct." *Dental Examiners*, 574 U.S. at ___, 135 S. Ct. at 1112 (quoting *Fed. Trade Comm'n v. Ticor Title Ins. Co.*, 445 U.S. 621, 631 (1992)).

¶ 55    *Midcal*'s clear articulation requirement is satisfied "where the displacement of competition [is] the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature.  In that scenario, the State must have foreseen and implicitly endorsed the anticompetitive effects as consistent with its policy goals." *Fed. Trade Comm'n v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 229 (2013).  *Midcal*'s active supervision requirement demands "realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests." *Patrick v. Burget*, 486 U.S. 94, 101 (1988).  The active supervision requirement also mandates that "the State exercise ultimate control over the challenged anticompetitive conduct." *Id.*

## B. Analysis

¶ 56    We conclude that the Commission's enforcement of the section 12-51-807(2) duties against Vizzi satisfies both the clear articulation and active supervision requirements described in *Midcal.* Such enforcement lies within the bounds of the state's statutory scheme and is properly considered state sovereign action, shielded from federal antitrust law.

¶ 57    The "clear articulation" prong is met by section 12-61-802(6), which defines "transaction-broker"; section 12-61-801, which sets out the General Assembly's policy goals in regulating transaction-brokers; and section 12-61-807, which sets out mandatory obligations for transaction-brokers. Notably, by setting out mandatory duties, section 12-61-807(2) precludes transaction-brokers from providing real estate services that are more limited than those required by statute. We thus conclude that the General Assembly has "foreseen and implicitly endorsed" the prohibition of practices engaged in by Vizzi here. *See Phoebe Putney Health Sys.,* 568 U.S. at 229.

¶ 58    The "active supervision" prong is met by section 12-61-101(2)(a), which defines what constitutes the practice of a real

estate broker, and section 12-61-113, which authorizes the Commission to investigate and censure licensed real estate brokers for violations of state license laws.  Together, these sections give a "realistic assurance" that the Commission, in disciplining Vizzi for violating the section 12-61-807(2) duties, acted within its statutory purview and thus to promote state policy.  *See Burget*, 486 U.S. at 100.

¶ 59     In *Dental Examiners*, the Supreme Court based its decision on a lack of proof indicating that the state legislature intended North Carolina's Board of Dental Examiners to have oversight of tooth whitening, 574 U.S. at ___, 135 S. Ct. at 1116, and the Court's concern that the Board's action may have been motivated by anti-competitive animus, *id.* at ___, 135 S. Ct. at 1114 ("When a State empowers a group of active market participants to decide who can participate in its market, and on what terms, the need for supervision is manifest.").

¶ 60     The considerations that motivated the Supreme Court's decision in that case are not present here.

¶ 61     First, Vizzi's actions fell within the Commission's statutory purview.  It was uncontested that Vizzi's actions, such as posting

properties on the MLS, constituted the practice of a real estate broker. It was also uncontested that the Commission's statutory purview is the regulation of the practice of real estate brokers. In contrast, in *Dental Examiners*, it was unclear whether tooth whitening constituted the practice of dentistry and, thus, whether tooth whitening fell within the statutory purview of North Carolina's Board of Dental Examiners.

¶ 62    Second, unlike in *Dental Examiners*, there is no support in the record for the notion that the Commission's enforcement actions were motivated by anticompetitive animus.

¶ 63    Thus, *Dental Examiners* is simply inapposite.

¶ 64    For two reasons, we reject Vizzi's conclusory argument that "the Commission's position conflicts with the Department of Justice's interpretation of Colorado law." First, we see no reason why, even if Vizzi's contention is true, any such interpretation of Colorado law would be binding on us. Second, Vizzi does not explain this contention and instead cites only the written exceptions he filed to the Commission's decision. *See People v. Diefenderfer*, 784 P.2d 741, 752 (Colo. 1989) (it is the duty of counsel for the appealing party to inform the reviewing court as to the specific

errors relied on, as well as the grounds, supporting facts, and authorities therefor).

¶ 65      We thus conclude that Vizzi has not established a violation of federal antitrust law.

## VII. Anonymous Complainant

¶ 66      Vizzi next maintains that the ALJ violated his due process rights by denying his motion to compel disclosure of the identity of the anonymous complainant. We are not persuaded.

¶ 67      We review discovery rulings for an abuse of discretion. *Silva v. Basin W., Inc.*, 47 P.3d 1184, 1188 (Colo. 2002).

¶ 68      Vizzi has not shown how the complainant's identity was relevant to his ability to defend against the Commission's charges. Vizzi was given notice of all of the Commission's witnesses and exhibits — the totality of evidence which supported the charges against him. *Cf. Copley v. Robinson*, 224 P.3d 431, 436 (Colo. App. 2009) (resident's due process rights were violated where he was denied a gun permit on a basis unknown to him at the time of his hearing).

¶ 69      The ALJ's initial decision and the Commission's final judgment stated the grounds, law, and reasoning for their respective

24

decisions, which did not rely on anything extraneous to the record. *Cf. id.* (resident's due process rights were violated where sheriff's summary denial of his gun permit stated no grounds, facts, law, or reasoning to support the denial of the permit). We thus conclude that the Commission did not err in upholding the ALJ's denial of Vizzi's motion to compel disclosure of the anonymous complainant. *See In re Dist. Court,* 256 P.3d 687, 691 (Colo. 2011).

## VIII. Imposition of Public Censure

¶ 70 Vizzi argues that the Commission exceeded its statutory authority and thus violated his due process rights when it imposed public censure after the ALJ had imposed only a fine and continuing education. Alternatively, he argues that the Commission's decision to impose public censure, given the ALJ's choice not to, was arbitrary and capricious. We disagree with these contentions.

¶ 71 In *Colorado Real Estate Commission v. Hanegan,* 947 P.2d 933, 935-36 (Colo. 1997), the Colorado Supreme Court upheld the Commission's imposition of public censure of a real estate broker after an ALJ, in his initial decision, had imposed only a fine. The *Hanegan* court concluded that, "[a]s long as the record as a whole

25

provides sufficient evidence that the penalty is not manifestly excessive in relation to the misconduct and the public need, the penalty will be upheld." *Id.* at 937. There, the sanctioned broker was one of only a few brokers to fail to take a required eight-hour course. *Id.* at 934.

¶ 72 Vizzi violated his statutory duties multiple times after the Commission's December 2010 position statement put him on notice that the listing contracts he prepared in 2013 and 2014 were improper.

¶ 73 Applying *Hanegan*, we conclude that the Commission acted within its statutory authority by imposing a sanction beyond that imposed by the ALJ, and that the Commission's sanction bore some relation to Vizzi's misconduct and to the needs of the public. *See id.* at 936-37; *see also* § 24-4-105(15)(b), C.R.S. 2018 (granting Commission authority to "affirm, set aside, or modify the order or any sanction or relief entered therein, in conformity with the facts and the law").

¶ 74 We reach this conclusion even though the Commission did not file exceptions to the ALJ's initial decision, because Vizzi's sanction was still an issue presented by the record. *See* § 24-4-105(15)(a)

26

(For administrative appeals, the scope of review is "within the scope of the issues presented on the record."); *cf. Cornell v. State of Colo. Bd. of Pharmacy*, 813 P.2d 771, 772-73 (Colo. App. 1990) (where the Colorado State Board of Pharmacy increased the disciplinary sanction on a pharmacist after the ALJ's initial decision, it did not exceed its jurisdiction, even though the agency did not file exceptions).

¶ 75    And the public censure penalty was sought in the original charge against Vizzi. Thus, he had a full and fair opportunity to argue about the appropriateness of this penalty.

## IX. Conclusion

¶ 76    The order is affirmed.

JUDGE J. JONES and JUDGE NIETO concur.